PEOPLE v HUMPHREY

PEOPLE v FREEMAN

Docket No. 85831. Submitted February 18, 1986, at Detroit.—Decided
    April 9, 1986. Leave to appeal applied for.

Officers of the Wayne County Sheriff's Department arrested
    defendants, Clarence Humphrey and Rosie E. Freeman, after
    conducting a search of certain premises pursuant to a search
    warrant. After a preliminary examination, defendant Hum-
    phrey was bound over for trial on charges of possession of
    cocaine, possession with intent to deliver heroin, possession of
    heroin, and felony-firearm. Both defendants were bound over
    on charges of conspiracy to violate the gambling laws and
    possession of gambling paraphernalia. Defendants moved to
    quash the search warrant and suppress the evidence. The
    Detroit Recorder's Court, Evelyn K. Cooper, J., issued an opin-
    ion and order granting defendants' motion. The people ap-
    pealed. *Held:*

    1. The affidavit, which was offered by the police authorities to
    show probable cause why the search warrant should have
    issued and which was based on information supplied by an
    unnamed informant regarding transactions involving controlled
    substances and gambling, contained affirmative allegations that
    the informant spoke with personal knowledge, that the infor-
    mant was credible, and that the information supplied was
    reliable. The trial court erred in ruling that the information
    supplied was not reliable.

    2. The Court of Appeals found defendants' claims that the
    informant did not have personal knowledge and that the infor-
    mant was not credible to be meritless.

    3. The information contained in the affidavit was not stale
    and provided probable cause to believe that controlled sub-
    stances remained on the premises, in view of the informant's

REFERENCES

Am Jur 2d, Searches and Seizures §§ 35-83.

Modern status of rule as to validity of nonconsensual search and
    seizure made without warrant after lawful arrest as affected by
    lapse of time between, or difference in places of arrest and search.
    19 ALR3d 727.

observation of controlled substances and their transfer some 72 hours before the issuance of the search warrant and a statement made to the informant regarding the continued presence of controlled substances on the premises in question.

4. The police authorities who executed the search warrant announced their presence and purpose and waited 20 to 30 seconds before breaking down the door to gain entry to the premises. By doing so, they complied with statutory requirements.

5. The trial court did not have jurisdiction to order a return of noncontraband items, seized during the execution of the search warrant, to defendant Humphrey. The people had filed a petition for the forfeiture of those items in the Wayne Circuit Court. Therefore, only the circuit court had jurisdiction to enter an order regarding the items.

Reversed and remanded.

1. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — AFFIDAVITS.

An affidavit offered to show probable cause why a search warrant should issue, when based on information supplied by an informant, must contain affirmative allegations that the informant spoke with personal knowledge; the affidavit must set forth facts from which one may conclude that the informant is credible, and the information supplied by the informant must be shown to be reliable (MCL 780.653; MSA 28.1259[3]).

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — TIMELINESS.

Probable cause supporting a search warrant must exist at the time the warrant is issued; the lapse of time between circumstances underlying a warrant and the issuance of the warrant does not automatically indicate staleness.

3. SEARCHES AND SEIZURES — SEARCH WARRANTS — TIMELINESS — PROBABLE CAUSE.

The measure of a search warrant's staleness rests not on whether there is recent factual information to confirm that a crime has been committed, but whether probable cause is sufficiently fresh to allow one to presume that the items sought remain on the premises.

4. SEARCHES AND SEIZURES — SEARCH WARRANTS — BREAKING DOORS — NOTICE — STATUTES.

The statute requiring that an officer to whom a search warrant is directed must give notice of his authority and purpose before breaking into a house is complied with when the officer, after

announcing his presence and purpose, waits 20 to 30 seconds before breaking down the door to the house and entering (MCL 780.656; MSA 28.1259[6]).

5. FORFEITURES AND PENALTIES — SEIZURE OF CONTRABAND — STATUTES.

Property taken or detained under the controlled substances provisions of the public health code is not subject to an action to recover personal property, but is deemed to be in the custody of the seizing agency subject only to a section of the code concerning such seizures or an order and judgment of the court having jurisdiction over the forfeiture proceedings (MCL 333.7523[2]; MSA 14.15[7523][2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Cornelius Pitts,* for defendant Humphrey.

*Seymour Floyd,* for defendant Freeman.

Before: J. H. GILLIS, P.J., and T. M. BURNS and W. F. HOOD,* JJ.

PER CURIAM. Defendants, Clarence Humphrey and Rosie E. Freeman, were arrested by officers of the Wayne County Sheriff's Department on October 12, 1984, during the course of the execution of a search warrant issued on October 11, 1984. After the arrests, defendant Humphrey was charged with possession of cocaine, MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i), possession with intent to deliver heroin, MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii), possesion of heroin, MCL 333.7403(2)(a)(iv); MSA 14.15(7403)(2)(a)(iv), and felony-firearm, MCL 750.227b; MSA 28.424(2). Both defendants were charged with conspiracy to vio-

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

late the gambling laws, MCL 750.301 and 750.157a; MSA 28.533 and 28.354(1), and possession of gambling paraphernalia, MCL 750.306; MSA 28.538. After a preliminary examination was held, the defendants were bound over for trial on all counts.

Defendants subsequently brought a motion to quash the search warrant and suppress the evidence. Through an opinion and order dated June 18, 1985, the trial court granted the motion after concluding that the affidavit was insufficient to establish the reliability of the information. The prosecutor brought the instant appeal of the lower court's order as of right.

The Michigan Supreme Court recently clarified the requirements which must be met before a search warrant based upon an affidavit may be issued in this state. In *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984), the Court construed MCL 780.653; MSA 28.1259(3) as setting forth three requirements, stated as follows:

"The first is that the affidavit, when based on informant-supplied information, must contain affirmative allegations that the informant spoke with personal knowledge. The second is that the affidavit must set forth facts from which one may conclude that the informant is 'credible.' * * * The third is that the information must be shown to be reliable. The Legislature has determined that probable cause is not established until all three requirements have been satisfied." 421 Mich 509-510.

As stated earlier, the trial court found the third requirement lacking in the affidavit here at issue. The relevant portions of that affidavit provided:

"The affiant is a member of the Wayne County Federal Task Force and is working in conjunction with S/A

Paul Lindsey of the F.B.I. relative to the trafficking of heroin and cocaine by a black male, who is known to a reliable informant of the F.B.I. as 'Big Daddy' and also as 'Track'. The affiant and S/A Lindsey have worked with this informant in the past and information from this informant has resulted in the arrest of more than five persons for violations of the Michigan Controlled Substance Act. Cocaine, heroin, firearms and narcotic proceeds have been confiscated as a result of the same information.

"This informant provided information to S/A Paul Lindsey which states that within the past 72 hours of the date of this search warrant this informant did observed [sic] controlled substances inside of the named location. The informant states that the informant knows the powder to be heroin and that the informant has observed the transfer of heroin and cocaine by 'Big Daddy'. That 'Big Daddy' did obtain these controlled substances from inside the named location which is the home of 'Big Daddy'. The informant further states that 'Big Daddy' has stated to the informant that he is never out of dope. The informant states that 'Big Daddy' is a big numbers man and that proceeds from the numbers operation are stored at the named location.

"An investigation conducted by the affiant shows that a vehicle parked within the curtilage of the location to have Michigan plate 765-KPX, to: Rosie E. Freeman at 12703 Broadstreet, Detroit 48238.

"Based upon the information received by the affiant from S/A Paul Lindsey, it is believed that the information received from the informant is reliable and that the items named to be searched for are being stored inside of the named location, in violation of the Michigan Controlled Substance Act (Public Health Code)."

In finding the affidavit insufficient to fulfill the "information reliability" requirement of MCL 780.653; MSA 28.1259(3), the trial court relied upon the absence of certain factors. For example, while the affidavit indicated that a vehicle belonging to defendant Freeman was parked on the premises, the court characterized this information

as irrelevant since it was not accompanied by an allegation that Freeman was an occupant or frequenter of the house. Next, the court complained of the absence of a physical description of "Big Daddy" or "Track" because this prevented the affiant from verifying the suspect's presence at the house. Finally, the court condemned the failure to note the observation of traffic to and from the house.

We do not agree that the deficiencies noted by the trial court compel the conclusion that the information was not reliable. As noted by the prosecutor, the most obvious flaw in the trial court's reasoning is that the affidavit refers to the "transfer", rather than sales, of narcotics, indicating that the house was not a street distribution point but a packaging and cutting center. Assuming this to be the case, there would not have been any foot traffic to and from the house for the affiant to observe. Further, the affiant could not be faulted for failing to conduct a controlled "buy" since the operators of a packaging and cutting center would not likely assume the obvious risks of engaging in street sales and offering individual purchases from the home. Regarding the failure to include a reference to Freeman's presence in the home, we consider such a detail to be so innocuous as to be of little help in assessing the reliability of the information.

While we do agree that a physical description of "Track" would have been of assistance, its absence is not determinative. Rather, the reliability of the information is sufficiently established by other factors, including the detail of the information supplied and the fact that the informant's knowledge that narcotics were on the premises and that the house was used for the transfer of narcotics was based upon the informant's personal observa-

tions. Another factor pointing to the likely reliability of the information is that this particular informant has provided information in the past which has been of assistance to the affiant in enforcing the Michigan controlled substance act. MCL 333.7101 *et seq.;* MSA 14.15(7101) *et seq.* We conclude that the trial court erred in finding that the "reliable information" requirement of the statute governing the contents of affidavits was not satisfied.

Although neither has filed a cross-appeal, defendants now argue that the trial court erred in finding the first two requirements under the statute satisfied. These arguments are patently meritless. Since the affidavit contains allegations that the informant *observed* both the presence of narcotics inside the place to be searched and the transfer of such narcotics, the affidavit clearly contains sufficient information to allow the conclusion that the informant's statements were based upon personal knowledge. The affidavit also contains facts from which one may conclude that the informant was credible. As noted by the trial court, the affidavit states that the informant previously worked with the affiant and the F.B.I., supplying information which resulted in the arrest of more than five persons and that various narcotics and firearms were confiscated. This was sufficient to find the second requirement satisfied. *Sherbine, supra,* p 510, fn 13. Contrary to the claims of defendants, the information need not have resulted in convictions to justify the conclusion that it was reliable. Obviously, many factors other than the reliability of informant-supplied information can result in the acquittal of a defendant on charges which have stemmed from such information.

The defendants also argue that the information

contained in the affidavit was stale since the observations occurred "in the past 72 hours", thus offering no justification for concluding that the controlled substances were present at the time the warrant was issued. However, as noted in *People v Osborn,* 122 Mich App 63, 66; 329 NW2d 533 (1982):

> "A search warrant must be supported on probable cause existing at the time the warrant is issued. *People v Chippewa Circuit Judge,* 226 Mich 326; 197 NW 539 (1924); *People v Gillam,* 93 Mich App 548; 286 NW2d 890 (1979). Nevertheless, a lapse of time between the occurrence of the underlying facts and the issuance of the warrant does not automatically render the warrant stale. *People v Gillam, supra,* p 552. As a panel of this Court said in *People v Gillam, supra,* p 553: 'the measure of a search warrant's staleness rests not on whether there is recent information to confirm that a crime is being committed, but whether probable cause is sufficiently fresh to presume that the sought items remain on the premises'."

We believe the informant's observation of controlled substances and the transfer thereof within 72 hours before the issuance of the search warrant, when coupled with the statement of "Track" or "Big Daddy" to the informant that he was "never out of dope", provided probable cause to believe that controlled substances remained on the premises.

Finally, defendants argue that the search warrant was unlawfully executed because the officers did not provide the occupants with a reasonable time in which to respond to their demand for admittance, citing *People v Harvey,* 38 Mich App 39; 195 NW2d 773 (1972). The *Harvey* Court was asked to construe MCL 780.656; MSA 28.1259(6), which authorizes an officer executing a warrant to break the doors or windows of a house "if, after

notice of his authority and purpose, he is refused admittance". In *Harvey,* the Court stated that "[i]n a hard drug case, where the officer has knocked on the door leading to the living quarters, loudly announced the presence of a law enforcement agency with a search warrant, announced the purpose, a raid, waited long enough for the inhabitants to reach the door from the room farthest away, and then began to kick in the door, the statute is complied with". 38 Mich App 43. We believe the requirements of the statute were satisfied here since, after announcing their presence and purpose, the officers executing the warrant waited 20 to 30 seconds before breaking down the door to the house and entering. See also *United States v Gorman,* 208 F Supp 747 (ED Mich, 1962), where a federal agent waited 25 to 30 seconds after knocking and announcing his purpose and identity before breaking in the door. The Court found a properly executed warrant. 208 F Supp 750.

The final issue to be addressed is raised by the prosecutor and concerns that portion of the June 18, 1985, order of the Recorder's Court directing the return of noncontraband items seized at the time of the execution of the search warrant. The prosecutor argues that the Recorder's Court was without jurisdiction to issue such an order, and we agree.

On October 29, 1984, the people filed a petition for forfeiture of the property seized during the execution of the warrant in the Wayne County Circuit Court. Therefore, pursuant to MCL 333.7523(2); MSA 14.15(7523)(2), only the Wayne County Circuit Court had jurisdiction to enter an order regarding the property. Section 7523(2) provides, in pertinent part:

"Property taken or detained under this article shall not be subject to an action to recover personal property, but is deemed to be in the custody of the seizing agency subject only to this section or an order and judgment of the court having jurisdiction over the forfeiture proceedings."

Therefore, the property at issue could only have been returned to defendant Humphrey by order of the Wayne County Circuit Court. The Detroit Recorder's Court was without jurisdiction to do so.

Reversed and remanded for trial.