PEOPLE v FETTERLEY

Docket No. 189936. Submitted October 7, 1997, at Grand Rapids. Decided May 8, 1998, at 9:05 A.M. Leave to appeal denied, 459 Mich ___.

Stephen R. Fetterley, following police searches of a trailer occupied by Fetterley and others and of a self-storage unit rented by Fetterley, was convicted by a jury in the Barry Circuit Court of possession with intent to deliver methamphetamine, possession with intent to deliver marijuana, and possession of methamphetamine. A second jury found the defendant to be a third-felony habitual offender, and the court, James H. Fisher, J., sentenced the defendant to prison terms of twelve to twenty-eight years for possession with intent to deliver methamphetamine, five to sixteen years for possession with intent to deliver marijuana, and two to eight years for possession of methamphetamine. The maximum of each sentence, as enhanced under the general habitual offender statute, MCL 769.11(1)(a); MSA 28.1083(1)(a), and the subsequent offender provision of the controlled substances provisions of the Public Health Code, MCL 333.7413(2); MSA 14.15(7413)(2), was quadruple the original maximum. The defendant appealed.

The Court of Appeals *held*:

1. There was sufficient evidence to support the convictions of possession with intent to deliver marijuana and possession of methamphetamine. The prosecution introduced evidence indicating that those drugs were found at the trailer in a bathroom connected to the bedroom occupied by the defendant, that $8,500 in cash was found under the defendant's bed, that an electronic scale was found on his dresser, and that a notebook listing names and dollar amounts were found in a drawer of his dresser. The prosecution also presented a witness who testified that the defendant had been the source of marijuana and methamphetamine resold by the witness.

2. The trial court's refusal of a request by the jury for a transcript of the testimony of the storage facility operator was not error requiring reversal inasmuch as the defense did not object. A defendant may not waive objection to an issue before the trial court and then raise it as error before the Court of Appeals.

·

3. The police officers' entry into the trailer complied with MCL 780.566; MSA 28.1259(6), which requires that police executing a search warrant on a building give notice of their authority and purpose and allow the occupants a reasonable time to respond before forcing entry. The search and seizure therefore was reasonable under US Const, Am IV, and Const 1963, art 1, § 11.

4. The trial court erred in enhancing the sentences under both the habitual offender statute, MCL 769.11(1)(a); MSA 28.1083(1)(a), and the controlled substances provisions of the Public Health Code, MCL 333.7413(2); MSA 14.15(7413)(2). The Legislature did not intend that sentences for subsequent controlled substance offenses be quadrupled by enhancement under both the habitual offender provisions and the controlled substance enhancement provision. Where, as here, a defendant is subject to sentence enhancement under the controlled substance provisions, the sentence may not be doubly enhanced under the habitual offender statute. Where a defendant commits a controlled substance offense, but is not subject to the enhancement provisions of the Public Health Code because, although the defendant is an habitual offender, there are no prior controlled substance offenses, enhancement under the habitual offender provisions is permitted.

5. The trial court, in denying a motion to suppress evidence, did not err in ruling that the search warrant and supporting affidavit for the trailer were valid despite their noncompliance with the standard Supreme Court-approved search warrant form. The content of the contested document, including the signed order of the magistrate, indicated that the document was a search warrant, and the document indicated that the affidavit was subscribed and sworn before the magistrate.

6. A checkbook seized at the trailer fell within the description of items to be seized pursuant to the search warrant for the trailer. The checkbook provided a proper basis for a search of the self-storage unit, and the trial court did not err in refusing to suppress evidence seized from the search of the self-storage unit on the asserted ground that the checkbook was unlawfully seized from the trailer and could not justify the search of the self-storage unit.

7. The trial court did not err in denying the defendant's motion for a new trial on the asserted ground of juror misconduct. The trial court correctly concluded that a juror's participation in a discussion of the defendant's criminal history at the house of the juror's neighbor before the trial ended did not impair the juror's impartiality.

Convictions affirmed; case remanded for resentencing.

1. CONTROLLED SUBSTANCES — POSSESSION — ACTUAL — CONSTRUCTIVE.

A person need not have physical possession of a controlled substance to be found guilty of possessing it; possession may be either actual or constructive, and may be joint as well as exclusive; the essential element is dominion or control over the controlled substance; circumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish possession.

2. CONTROLLED SUBSTANCES — DELIVERY — INTENT.

Actual delivery is not required to prove intent to deliver a controlled substance; intent may be inferred from facts and circumstances such as the quantity and packaging of the controlled substance.

3. SEARCHES AND SEIZURES — SEARCH WARRANT EXECUTIONS — FORCIBLE ENTRY.

Police officers executing a search warrant on a building must give notice of their authority and purpose and be refused entry before they can force entry (MCL 780.566; MSA 28.1259[6]).

4. SEARCHES AND SEIZURES — SEARCH WARRANT EXECUTIONS — FORCIBLE ENTRY — CONSTITUTIONAL LAW.

Compliance with the statute that requires police officers executing a search warrant on a building to give notice of their authority and purpose and be refused entry before they can force entry is part of the inquiry into whether the search is reasonable under the Fourth Amendment (US Const, Am IV; Const 1963, art 1, § 11; MCL 780.566; MSA 28.1259[6]).

5. CONTROLLED SUBSTANCES — SUBSEQUENT OFFENSES — SENTENCE ENHANCEMENT.

The sentence for a second or subsequent controlled substance offense may be enhanced pursuant to the controlled substance provisions of the Public Health Code only; such a sentence is not subject to further enhancement pursuant to the general habitual offender statute (MCL 333.7413[2], 769.11[1][a]; MSA 14.15[7413][2], 28.1083[1][a]).

6. SEARCHES AND SEIZURES — WARRANTS — PARTICULARIZATION OF DESCRIPTION.

The purpose of the particularization requirement in the description of items to be seized pursuant to a search warrant is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure (MCL 780.654; MSA 28.1259[4]).

7. CRIMINAL LAW — NEW TRIAL — JUROR MISCONDUCT.

Not every instance of juror misconduct will require a new trial; before a new trial is ordered, some showing must be made that the mis-

conduct affirmatively prejudiced the defendant's right to a trial before an impartial and fair jury.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Dale A. Crowley*, Prosecuting Attorney, and *Michael E. Moody*, Assistant Attorney General, for the people.

State Appellate Defender (by *Corrine B. Yates*) and Stephen R. Fetterley, in propria persona.

Before: WHITE, P.J., and CAVANAGH and REILLY, JJ.

WHITE, P.J. Defendant was convicted by a jury of one count of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b); MSA 14.15(7401)(2)(b), one count of possession with intent to deliver marijuana, MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c), and one count of possession of methamphetamine, MCL 333.7403(2)(b); MSA 14.15(7403)(2)(b). A separate jury found that defendant was a third-offense habitual offender, MCL 769.11; MSA 28.1083. He was sentenced to enhanced prison terms of twelve to twenty-eight years for possession with intent to deliver methamphetamine, five to sixteen years for possession with intent to deliver marijuana, and two to eight years for possession of methamphetamine. Defendant appeals as of right. We affirm his convictions, but vacate his sentences and remand for resentencing.

I

Defendant first argues that the prosecutor presented insufficient evidence to support the convictions of possession with intent to deliver marijuana and possession of methamphetamine. We disagree.

In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Here, defendant challenges the sufficiency of the evidence to establish his knowing possession of the controlled substances.

A person need not have physical possession of a controlled substance to be found guilty of possessing it. *Wolfe, supra* at 519-520. Possession may be either actual or constructive, and may be joint as well as exclusive. *Id.* The essential question is whether the defendant had dominion or control over the controlled substance. *People v Konrad*, 449 Mich 263, 271; 536 NW2d 517 (1995). A person's presence at the place where the drugs are found is not sufficient, by itself, to prove constructive possession; some additional link between the defendant and the contraband must be shown. *Wolfe, supra* at 520; *People v Vaughn*, 200 Mich App 32, 36; 504 NW2d 2 (1993). However, circumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish possession. *People v Sammons*, 191 Mich App 351, 371; 478 NW2d 901 (1991), cert den 505 US 1213; 112 S Ct 3015; 120 L Ed 2d 888 (1992).

Here, the prosecutor presented sufficient circumstantial evidence linking defendant to the marijuana and methamphetamine found in a trailer. There was evidence that defendant resided in the trailer and used the master bedroom. Defendant was present at the trailer when the police executed the search war-

rant at 3:15 A.M. Defendant told police that he and his girlfriend used the back bedroom,[1] but claimed that his girlfriend was not involved in trafficking drugs. A letter was found in the trailer addressed to defendant at that address. There were two bathrooms in the trailer, but the methamphetamine and marijuana were found in the bathroom connected to the master bedroom. The methamphetamine was found in the toilet, and the marijuana was found in a cabinet underneath the sink.

There were items in the master bedroom from which the jury could reasonably infer that the bedroom's occupant was the owner of the controlled substances. Eighty-five hundred dollars in cash was found underneath the bed, an electronic scale of the type commonly used to weigh controlled substances for resale was found on the dresser, and a notebook containing names followed by dollar amounts was found in the top dresser drawer. Additionally, Michael Waters testified that he sold marijuana and methamphetamine and that defendant was his source. Waters testified that the purchases usually took place in the back bedroom of the trailer, where defendant lived with his girlfriend and children, and that he purchased methamphetamine from defendant the day before defendant's trailer was raided by the police.

A checkbook at the trailer led the police to a self-storage facility. The owner of the facility, Kirk Pasche, produced a rental agreement showing that a storage unit was rented by defendant. Inside the storage unit, police discovered a file cabinet that con-

---

[1] An officer clarified that the master bedroom was the same room as the back or rear bedroom.

tained five pounds of methamphetamine, as well as several glass vials commonly used to package the substance, and several small empty bags made of clear plastic. The cardboard box containing the methamphetamine had defendant's fingerprint on it. According to Officers Matyas and Edwards, defendant admitted that the methamphetamine at the storage unit was under his control, although he claimed that it belonged to Sonny McWilliams. The officers testified that defendant admitted that he and McWilliams were in a drug-trafficking organization in which McWilliams purchased large quantities of methamphetamine, which defendant was responsible for distributing.

Defendant claims that there was insufficient evidence to establish that he possessed the controlled substances found in the trailer because they could have belonged to any of the three other adults present at the time of the search. However, the prosecution need not negate every reasonable theory of innocence, but must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence is presented. *People v Carson*, 189 Mich App 268, 269; 471 NW2d 655 (1991). Viewed in a light most favorable to the prosecution, the evidence discussed above was sufficient to support a finding beyond a reasonable doubt that defendant constructively possessed the drugs found in the trailer bathroom.

There was also sufficient evidence from which the jurors could conclude that defendant intended to deliver the marijuana. Actual delivery is not required to prove intent to deliver. *Wolfe, supra* at 524. An actor's intent may be inferred from all of the facts and

circumstances, *People v Safiedine*, 163 Mich App 25, 29; 414 NW2d 143 (1987), and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient. *People v Bowers*, 136 Mich App 284, 297; 356 NW2d 618 (1984). Intent to deliver can be inferred from the quantity of the controlled substance in the defendant's possession and from the way in which the controlled substance is packaged. *Wolfe, supra* at 524. Here, eight small clear plastic bags of marijuana were found together in a larger bag. An electronic scale, a large sum of cash, and tabulations with names and dollar amounts were also found in the master bedroom area. In addition, Waters testified that he had purchased marijuana from defendant several times in the past. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence from which the jurors could conclude that the marijuana was not solely for defendant's personal use and that he intended to deliver it to others.

II

Defendant next argues that the trial court erred in refusing the jurors' request for a transcript of the testimony of the storage facility operator. We find no error requiring reversal.

During their deliberations, the jurors sent a note to the trial court asking, among other things, for a transcript of Pasche's testimony. The matter was resolved as follows:

*The Court*: Mr. Fetterley's now here with Mr. Barnett [defense counsel]. I received a note from the jury . . . .

\*   \*   \*

*The Court*: "Transcript of testimony by Pasche," which we obviously don't have. I'm just gonna tell the jury that they'll have to remember the testimony of Mr. Pasche as best they can. Any objection to that?

*Mr. McNeill* [prosecutor]: No, your Honor.

*The Court*: Mr. Barnett?

*Mr. Barnett*: No, your Honor.

\*        \*        \*

*The Court*: Morning, ladies and gentleman. Please be seated.

We have all 12 of our jurors here this morning. We've received a note from you, and I wanna go through those items with you.

\*        \*        \*

The first item was the rental agreement contract. We're getting that around for you. The second item was Miss Moore's checkbook. And we're going to give that to you. Third item you've asked for is a transcript of the testimony of Mr. Pasche. We do not have that available and we can't— cannot make it available to you. We just don't have the technology in this courtroom to produce transcripts on a daily basis. So, you're going to have to remember the testimony of Mr. Pasche as best you can. That's the best I can do for you at this point.

Defendant argues that the trial court committed error warranting reversal by violating MCR 6.414(H), which states:

If, after beginning deliberation, the jury requests a review of certain testimony or evidence, the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may order the jury to deliberate further without the requested review, so long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

Defendant asserts that the jury's request was reasonable and could not properly be refused by the trial court despite defense counsel's failure to object. However, defense counsel expressly acquiesced to the court's handling of the jury's request. A defendant may not waive objection to an issue before the trial court and then raise it as an error before this Court. *People v Simon*, 174 Mich App 649, 657; 436 NW2d 695 (1989). To hold otherwise would allow defendant to harbor error as an appellate parachute. *People v Shuler*, 188 Mich App 548, 552; 470 NW2d 492 (1991).Further, in *People v Wytcherly (On Rehearing)*, 176 Mich App 714, 716; 440 NW2d 107 (1989), this Court held that the trial court's denial of the jury's request to review transcripts was not an abuse of discretion where both counsel agreed to that denial. We find no error.

III

Defendant next asserts that the trial court erred in refusing to suppress the fruits of the search of the trailer on the ground that the police failed to knock-and-announce their presence before forcing entry into the trailer.

Defendant argues that the police conduct violated the knock-and-announce statute, MCL 780.656; MSA 28.1259(6), and constituted an unreasonable search and seizure under the United States and Michigan Constitutions, US Const, Am IV; Const 1963, art 1, § 11. The United States Supreme Court has held that the knock-and-announce requirement forms a part of the reasonableness inquiry under the Fourth Amendment. *Wilson v Arkansas*, 514 US 927; 115 S Ct 1914;

131 L Ed 2d 976 (1995). In addition, the Michigan knock-and-announce statute provides:

> The officer to whom a warrant is directed or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if, after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in the execution of the warrant. [MCL 780.656; MSA 28.1259(6).]

The knock-and-announce statute requires that police executing a search warrant give notice of their authority and purpose and be refused entry before forcing their way in. *People v Williams (After Remand)*, 198 Mich App 537, 545; 499 NW2d 404 (1993). Police must allow a reasonable time for the occupants to answer the door following the announcement. *Id.*

Before trial, defendant, on the basis of the failure to knock and announce, filed a motion to suppress the evidence seized from the trailer. The trial court conducted a hearing and determined that the police adequately complied with the requirement.

Officer Matyas testified that the trailer sat one to two hundred feet from the road and was accessible by a dirt driveway that curved around in front of the trailer. Police officers arrived in three or four marked vehicles and other unmarked vehicles. The Emergency Services Team (EST) drove a military-type truck and pulled up right in front of the trailer. The EST members wore bullet-proof vests and helmets and had the word "police" on their clothing. As the EST approached the trailer, Matyas activated the overhead lights and announced repeatedly over the vehicle's public-address system, "This is the police. We have a

search warrant." Matyas testified that he continued the announcement for at least five minutes while he watched the EST moving out of the truck and slowly toward the front door. According to Matyas, they paused at the door for about ten or fifteen seconds and then entered.

Michael Byam testified that he was a member of the State Police EST that assisted in executing the search warrant. According to Byam, there was a marked unit with an overhead light that was used to make the announcement, followed by a vehicle that carried the raid team and then a third vehicle. Byam testified that when the lead car came to a stop in front of the trailer it activated its overhead lights and announced, "State police, search warrant, open the door." However, Byam agreed that the announcement may have been just "Police. Search warrant." All the EST officers entering the residence wore paramilitary uniforms and raid vests that were marked "police" across the front. Byam also testified that, as he was taking his position behind the residence, he observed a male looking out the window, which he immediately reported to the entry team orally and then by radio.

John Porter testified that he was a member of the State Police EST that assisted in executing the search warrant. Porter stated that he rode in the truck and was wearing fatigues, a heavy vest that said "police" across the front, a black hood, and a helmet. Porter heard the announcement, "State police. We have a search warrant" being given as he was getting out of the truck. Once the team got out of the truck, it took them twenty to thirty seconds to reach the door. Once they all arrived at the door, they gained access in five seconds or less. Porter testified that he did not

knock or make any announcement when he was at the door.

Officer Rickey testified that he was parked on the road when the EST truck approached the trailer. Rickey stated that before the van turned into the driveway, it turned on its overhead lights and announced "State police. Search warrant" over the loud speaker. While the announcement continued, Rickey saw the EST members get out of the rear of the van, get into formation, and slowly approach the front door. They held their position in front of the door for a short time and then entered. Rickey estimated that it took the EST forty-five seconds to get from the van to the door and that they then waited another thirty seconds before entering.

Other witnesses testified that they did not hear a police announcement.

The trial court held that the police officers executing the search warrant did not violate the knock-and-announce requirement. The court ruled that it was sufficient that the police repeatedly announced "State police. We have a search warrant" over a loudspeaker for at least thirty to sixty seconds before the officers entered the house. The court found that the request to enter was implicit in the announcement. Defendant argues on appeal that, even if the police announced "Police. Search warrant" over a loud speaker, they did not satisfy the knock-and-announce requirement because the general announcement did not serve to elicit an invitation to enter or to confirm that admittance was being refused. We disagree.

Several police officers testified that they announced "Police. Search warrant" over a public-address system for at least thirty seconds before

entering the residence. In addition, police officers testified that the overhead lights of at least one of the police vehicles were flashing and there was evidence that this was visible to the trailer's occupants. The members of the EST that performed the initial entry of the house were wearing raid gear that was marked "Police" in front. Officer Byam testified that, as he was approaching the trailer, he saw a male looking out the window, which he immediately reported to the entry team.

Under the circumstances, the announcement was sufficient to notify the occupants of the officers' authority and purpose. *Williams, supra* at 545. Neither case law nor statute requires that the police physically knock on the door; rather, they need only give proper notice to the occupants of their authority and purpose. Moreover, the police waited at least thirty seconds from the time that the announcement began before entering, which was a reasonable time for the occupants to answer the door. *Id.; People v Humphrey*, 150 Mich App 806, 814; 389 NW2d 494 (1986) (knock-and-announce statute was not violated when police, after announcing their presence and purpose, waited twenty to thirty seconds before breaking down the door). This case is unlike *Wilson, supra* at 929, in which the officers did not announce their presence and state that they had a warrant until they were coming through the door of the residence to be searched. The trial court did not err in finding that the entry of the trailer complied with the statute and did not constitute an unreasonable search and seizure.

IV

Defendant next argues that the trial court erred in enhancing his sentences under both the habitual offender provisions, MCL 769.11(1)(a); MSA 28.1083(1)(a), and the controlled substance provisions of the Public Health Code. MCL 333.7413(2); MSA 14.15(7413)(2). By enhancing under both statutes, the trial court imposed sentences that quadrupled the original maximum sentences for the underlying offenses. We conclude that the Legislature did not intend that a sentence for a subsequent drug offense be quadrupled by enhancement under both enhancement provisions, and we therefore remand for resentencing.

A

Provided permissible factors are considered, appellate review of sentencing determinations is limited to whether the sentencing court abused its discretion. *People v Odendahl*, 200 Mich App 539, 540-541; 505 NW2d 16 (1993). However, we review questions of statutory interpretation de novo. *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Stanaway*, 446 Mich 643, 658; 521 NW2d 557 (1994). The first criterion in determining intent is the specific language of the statute. *People v Pitts*, 216 Mich App 229, 232; 548 NW2d 688 (1996). The Legislature is presumed to have intended the meaning it plainly expressed. *People v Roseburgh*, 215 Mich App 237, 239; 545 NW2d 14 (1996). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary

nor permitted. *People v Nantelle*, 215 Mich App 77, 80; 544 NW2d 667 (1996). However, literal constructions that produce unreasonable and unjust results that are inconsistent with the purpose of the act should be avoided. *Grand Blanc Cement Products, Inc v Ins Co of North America*, 225 Mich App 138, 143; 571 NW2d 221 (1997), quoting *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994).

The habitual offender statute provides in pertinent part:

> (1) If a person has been convicted of 2 or more felonies . . . that person shall be punished upon conviction as follows:
>
> (a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, then the court, except as otherwise provided in this section or section 1 of chapter 11, may sentence the person to imprisonment for a maximum term which is not more than twice the longest term prescribed by law for a first conviction of that offense or for a lesser term.
>
> \*    \*    \*
>
> (c) If the subsequent felony is a major controlled substance offense, the person shall be punished as provided by part 74 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.7401 to 333.7415 of the Michigan Compiled Laws. [MCL 769.11(1)(a), (c); MSA 28.1083(1)(a), (c).]

The term "major controlled substance offense" is defined by statute as a violation of MCL 333.7401(2)(a); MSA 14.15(7401)(2)(a),[2] a violation of

---

[2] At the time defendant was convicted and sentenced, MCL 333.7401; MSA 14.15(7401) provided:

> (1) Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance . . . .

MCL 333.7403(2)(a)(i)-(iv); MSA 14.15(7403)(2)(a)(i)-(iv),[3] or conspiracy to commit either offense. MCL

(2) A person who violates this section as to:

(a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv) and:

(i) Which is in an amount of 650 grams or more of any mixture containing that substance is guilty of a felony and shall be imprisoned for life.

(ii) Which is in an amount of 225 grams or more, but less than 650 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 20 years nor more than 30 years.

(iii) Which is in an amount of 50 grams or more, but less than 225 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 10 years nor more than 20 years.

(iv) Which is in an amount less than 50 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 1 year nor more than 20 years, and may be fined not more than $25,000.00, or placed on probation for life.

[3] At pertinent times, MCL 333.7403; MSA 14.15(7403) provided:

(1) A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue . . . unless the controlled substance, controlled substance analogue . . . was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

(2) A person who violates this section as to:

(a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv), and:

(i) Which is in an amount of 650 grams or more of any mixture containing that substance is guilty of a felony and shall be imprisoned for life.

(ii) Which is in an amount of 225 grams or more, but less than 650 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 20 years nor more than 30 years.

(iii) Which is in an amount of 50 grams or more, but less than 225 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 10 years nor more than 20 years.

(iv) Which is in an amount of 25 grams or more, but less than 50 grams of any mixture containing that substance is guilty of a felony, and shall be imprisoned for not less than 1 year and not more

761.2; MSA 28.843(12). The offenses of which defendant was convicted are not "major controlled substance offenses."

The subsequent offender provision of the controlled substances provisions of the Public Health Code provides:

> Except as otherwise provided in subsections (1) and (3), an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both. [MCL 333.7413(2); MSA 14.15(7413)(2).]

Subsections 1 and 3 do not apply to this case, and it is undisputed that defendant was convicted of a subsequent offense under the controlled substance article.[4]

B

Defendant argues that this Court has repeatedly held that the habitual offender statute cannot be used to enhance a controlled substance violation on the basis of prior drug convictions because the controlled substance provisions specifically and exclusively provide for the enhancement of penalties in cases involving controlled substances. In support, defendant cites *People v Edmonds*, 93 Mich App 129; 285 NW2d 802 (1979), and its progeny.

---

than 4 years, and may be fined not more than $25,000.00 or placed on probation for life.

[4] We thus reject defendant's argument that the instant offenses are not included in the offenses subject to enhancement under the controlled substance provisions. See MCL 333.7413(2); MSA 14.15(7413)(2).

The defendant in *Edmonds* was convicted of delivering heroin, MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), and had a previous conviction under the controlled substances act, MCL 335.348; MSA 18.1070(48).[5] The defendant was also found to be a third-felony habitual offender. The sentencing court enhanced his sentence under both the habitual offender provision and the controlled substances act, increasing his maximum term for delivering heroin from twenty to eighty years. This Court held such enhancement improper:

> The controlled substances act was enacted to regulate the control, manufacture, production, sale, possession, use, etc., of controlled substances, with penalties for violation of the act specifically delineated. As such the act represents this state's comprehensive policy toward the use of controlled substances. As a specific and comprehensive measure the act's sentence-augmentation provision controls over the general habitual offender statute. Accordingly the sentence on a second or subsequent drug offense is under the purview of § 48 of the controlled substance act exclusively. [*Id.* at 135.]

In a footnote, this Court noted:

> It must be noted that application of the controlled substances act penalty augmentation is proper when the defendant is being sentenced on a drug conviction. If the defendant commits a nondrug felony after one or more drug convictions then the habitual offender act applies upon conviction of that nondrug felony. [*Id.*, at 135, n 1.]

The *Edmonds* Court did not consider the 1978 amendment of MCL 769.11; MSA 28.1083, which pro-

---

[5] The controlled substances act has since been reenacted as part of the Public Health Code. The provisions are virtually identical.

vided that, if the subsequent felony is a major controlled substance offense, the person shall be punished as provided by 1971 PA 196, as amended (the controlled substances act).[6] See *People v Elmore*, 94 Mich App 304, 306, n 1; 288 NW2d 416 (1979).

This Court followed *Edmonds* in *Elmore*. The defendant in *Elmore* was convicted of delivering heroin, MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), and of being an habitual offender, MCL 769.11; MSA 28.1083. The trial court enhanced his sentence under both the habitual offender statute and the controlled substance provisions. *Elmore, supra* at 305. This Court, following *Edmonds*, concluded that the sentencing court's use of both the habitual offender statute and the controlled substance provisions to increase the maximum term for delivering heroin from twenty to eighty years was an improper enhancement of the defendant's sentence. *Id.* at 305-306.[7]

---

[6] The statutory reference to major controlled substance offenses in the habitual offender statute has been changed to refer to the Public Health Code, rather than the repealed controlled substances act.

[7] The *Elmore* Court observed:

We note that the conclusion reached on this question by the panel in *Edmonds* is further reinforced by the Legislature's subsequent amendment of MCL 769.11; MSA 28.1083, which now provides:

\*       \*       \*

(c) *If the subsequent felony is a major controlled substance offense, the person shall be punished as provided by Act No. 196 of the Public Acts of 1971,*as amended. [*Id.* at 306, n 1 (emphasis in *Elmore*).]

Although the *Elmore* Court refers to the Legislature's *subsequent* amendment of MCL 769.11; MSA 28.1083, the amendment actually preceded the Court's decision in *Edmonds*, being immediately effective on March 22, 1978. With respect to the legislative intent of the amendment, see the dis-

In *People v Franklin*, 102 Mich App 591; 302 NW2d 246 (1980), the defendant was convicted on her guilty pleas of delivering less than fifty grams of heroin, MCL 333.7401(2)(a)(iv); MSA 14.15(7401(2)(a)(iv), and of being a seventh-offense habitual offender, MCL 769.12; MSA 28.1084. Pursuant to a sentence agreement, the defendant was sentenced to four to twenty years' imprisonment. *Id.* at 593. The defendant contended on appeal that her plea was the result of an illusory sentence agreement, arguing that because she was convicted of an offense set forth in the controlled substance provisions of the Public Health Code, her sentence could only be supplemented under the provisions of that article, MCL 333.7413; MSA 14.15(7413), and not under the general habitual offender provisions. She contended that since none of her prior convictions were for drug-related offenses, no supplementation was possible. This Court agreed that enhancement under the controlled substance provisions was not proper, but concluded that enhancement was permissible under the habitual offender statutes because the enhancement section of the controlled substance provisions did not apply. *Id.* at 594. Thus, this Court concluded that because the case did not involve a situation where both statutes were seemingly applicable, reliance on *Edmonds, supra,* and *Elmore, supra,* was misplaced.

C

The prosecutor dismisses *Edmonds* and *Elmore* as inapplicable on two bases. First, the prosecution argues that the *Edmonds'* "preemption concept" has

---

cussion of *People v Primer*, 444 Mich 269; 506 NW2d 839 (1993), pp 537-540 *infra.*

been rejected by other panels of this Court in *People v Lynch*, 199 Mich App 422; 502 NW2d 345 (1993), *People v Brown*, 186 Mich App 350; 463 NW2d 491 (1990), and *People v Eilola*, 179 Mich App 315; 445 NW2d 490 (1989), and by the Supreme Court in *People v Bewersdorf*, 438 Mich 55; 475 NW2d 231 (1991), cert den sub nom *Johnson v Michigan*, 502 US 1111; 112 S Ct 1214; 117 L Ed 2d 452 (1992). Second, the prosecution argues that the Legislature's specific exclusion of major controlled substance offenses from the application of the habitual offender provisions evidences an intent to include other controlled substance violations within the ambit of the habitual offender provisions. We find both arguments unpersuasive as unsupported by the cases upon which they are based and the Supreme Court's decision in *People v Primer*, 444 Mich 269; 506 NW2d 839 (1993).

1

In *Eilola, supra*, the defendant pleaded guilty of first-degree retail fraud, MCL 750.356c(2); MSA 28.588(3)(2), and of being a third-felony habitual offender. The defendant's retail fraud charge had been elevated from second-degree retail fraud, a misdemeanor, to first-degree retail fraud, a felony, on the basis of a prior conviction of larceny in a building. The defendant argued on appeal that he could not be convicted of both first-degree retail fraud and as an habitual offender because to do so would constitute a double enhancement. This Court disagreed.

The *Eilola* Court discussed *Edmonds*, *Elmore*, and *Franklin*. The Court also discussed *People v Honeycutt*, 163 Mich App 757; 415 NW2d 12 (1987), in which this Court held that a conviction for possession

of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), was not subject to enhancement under the habitual offender statutes. The Court continued:

> Turning to the case at bar, we believe that the habitual-offender statutes can be utilized to enhance the sentence of a defendant who is convicted of first-degree retail fraud under subsection 2 of the statute. In reaching this conclusion, we believe that a number of important distinctions exist between the retail-fraud statute and the controlled substance statutes and the felony-firearm statute. Under the controlled-substance statute, the enhancement section clearly serves only to enhance a sentence and is based exclusively upon prior drug-related offenses. Under the retail-fraud statute, first-degree retail fraud is a substantive offense and the "recidivist" element contained in subsection 2 is but one alternate way of committing first-degree retail fraud. Additionally, although an offender can come under the recidivist provisions of first-degree retail fraud based upon a prior conviction for retail fraud, a first-degree retail fraud charge can also be based upon a prior conviction under certain other statutes, namely, false pretenses over $100, larceny over $100, and larceny in a building.
>
> *    *    *
>
> . . . Unlike the felony-firearm statute, or even the controlled-substance statutes, where application of both the enhancement provisions contained within those respective statutes as well as the general habitual-offender statute would produce ever escalating and conflicting results, the general habitual-offender statute dovetails harmoniously with the retail-fraud statute. That is, the internal provisions of the retail-fraud statute can raise an offense from a misdemeanor to a felony, but do not enhance the sentence once a defendant is at the level of a felony offense. At this point, the general habitual-offender statute can be applied where the offender has prior felony convictions. [*Eilola, supra* at 321-323.]

In *Brown, supra,* the defendant was charged with first-degree retail fraud for shoplifting cologne. As in *Eilola,* the charge was escalated from the misdemeanor, second-degree retail fraud, to the felony, first-degree retail fraud, on the basis of the defendant's prior convictions of larceny. The defendant pleaded guilty of first-degree retail fraud and of being a fourth-felony habitual offender. He argued on appeal that because his prior convictions were used to establish his conviction of first-degree retail fraud, they could not be used as prior felonies under the habitual offender statutes.[8] This Court disagreed, noting that the language of the statutes did not preclude use of the same prior offense under both statutes and observing:

In questioning whether it would be proper to use a subsection 2 offense to establish both a subsection 2 conviction as well as a person's status as an habitual offender, the *Eilola* Court cited *Franklin,* as the primary basis for its concern. *Franklin* dealt with the applicability of the general habitual-offender statutes to a defendant convicted under the controlled substances act for delivery of less than fifty grams of heroin. Although the defendant possessed several prior felony convictions, none were drug-related. Relying on *People v Edmonds* [*supra*], the defendant argued that the general habitual-offender statutes could not be used to enhance her controlled-substance conviction . . . . The *Franklin* Court, however, distinguished *Edmonds,* holding that, where a defendant is convicted of a controlled-substance offense, but has no prior convictions under the con-

---

[8] This issue was not addressed in *Eilola,* where the Court determined only that a conviction of first-degree retail fraud under section 2 could be enhanced under the habitual offender provisions and left open the question whether a conviction that is used to raise second-degree retail fraud to first-degree retail fraud can also be used to justify an habitual charge. *Eilola, supra* at 324.

trolled substances act, the sentence-enhancement provisions of that act are not applicable and, thus, enhancement under the general habitual-offender statutes is permissible.

As noted by the *Eilola* Court, the implication of *Franklin* is that, had the defendant in fact possessed prior drug-related convictions, thereby bringing the sentence-augmentation provisions of the controlled substances act into play, the habitual offender statutes could not have been used. . . .

We believe that, with respect to the applicability of the habitual-offender statutes, there are a number of important distinctions between a conviction under the controlled substances act and a conviction under subsection 2 of the first-degree retail-fraud statute that dispel the concern expressed in *Eilola*.

First, it must be noted that the determination in *Edmonds*, *supra*, that the sentence-augmentation provisions of the controlled substances act govern over those of the general habitual-offender statutes, was premised upon the fact that the controlled substances act represents this state's comprehensive policy toward the use of controlled substances. The offense of first-degree retail fraud, however, is but one criminal offense under the general penal code; it is not part of a comprehensive state policy relating to larcenous offenses. . . .

More importantly, however, is that, *while the controlled substances act contains sentence-enhancement characteristics similar to the habitual-offender statutes*, the first-degree retail-fraud statute does not. That is, the sentencing provisions of both the controlled substances act and the habitual-offender statutes *provide for gradations of punishment upon subsequent convictions. Thus, any attempt to apply the general habitual-offender statutes to a repeat controlled-substance offender would result in a direct conflict between similar sentencing schemes. Where there is a conflict, the specific enhancement statute will prevail to the exclusion of the general one.*

The first-degree retail-fraud statute on the other hand does not provide for gradations of punishment. Rather, it punishes the commission of a second-degree retail-fraud

offense by a person with a prior conviction for a subsection 2 offense as a separate substantive offense. In other words, *while both the controlled substances act and the general habitual-offender statutes use prior convictions to establish the severity of punishment for the repeat commission of criminal acts, the first-degree retail fraud statute uses prior convictions to establish the severity of the offense.* Thus, because different statutory schemes are involved, a conflict does not arise from the mutual application of the two statutes to the same prior conviction. [*Brown, supra* at 354-357 (citations omitted; emphasis added).]

In *Bewersdorf, supra,* the Supreme Court held that the general habitual offender provisions can be used to enhance a sentence for a felony conviction of operating a motor vehicle while under the influence of intoxicating liquor (OUIL). The OUIL statutory scheme, like the retail fraud statutory scheme at issue in *Eilola* and *Brown,* provides for the escalation of a misdemeanor to a felony, with increased penalties, based on prior convictions of similar offenses. The Court observed:

While the habitual offender act, which is found in the Code of Criminal Procedure, establishes a procedure for enhancing a sentence, it is clear that the OUIL provisions of the Motor Vehicle Code establish crimes. Because OUIL-3 is a separate crime, the prosecutor must prove all elements of the offense, including the prior convictions. [*Bewersdorf, supra* at 68.]

In *Lynch, supra,* this Court determined, following *Bewersdorf* and *Eilola,* that a conviction of fleeing and eluding, second offense (a felony enhancement of the misdemeanor charge of fleeing and eluding based on a prior conviction) could be enhanced under the habitual offender provisions.

We conclude that *Bewersdorf* and *Lynch* are consistent with *Eilola* and *Brown* and do not undermine *Edmonds* and *Elmore*. All four cases allow the enhancement under the general habitual offender provisions of felony convictions of *offenses* that include as an enhancing element the prior commission of a similar offense. None of these cases involved the general habitual enhancement of a sentence already enhanced by a *sentencing* enhancement provision such as that involved here.

2

The prosecution also relies on the amendment of the habitual offender provisions expressly stating that a major controlled substance offender is to be punished as provided in the Public Health Code. The prosecution argues that the legislative exclusion of major controlled substance offenses implies the inclusion of other controlled substance offenses. However, the Supreme Court addressed the legislative intent of this provision in *People v Primer, supra*. In that case, Primer pleaded guilty of delivering less than fifty grams of cocaine and tendered a conditional plea of guilty to a second-offense habitual offender charge. Under the controlled substances act, MCL 333.7403; MSA 14.15(7403), the sentence was mandated to be not less than one year nor more than twenty years, or life probation. Primer was sentenced as an habitual offender to a seven- to twenty-five-year term. The second defendant, Hegwood, pleaded guilty of the same offenses and was sentenced as an habitual offender to nine to thirty years. *Id.* at 273.

On appeal, both defendants argued that they could not be sentenced under the habitual offender provi-

sions because of the specific provision added to those provisions in 1978 providing that a person convicted of a major controlled substance offense shall be punished as provided in the Public Health Code.[9] The *Primer* Court stated the question presented as

> whether a person convicted of a major controlled substance offense, *who has no prior record of conviction of a drug offense,* but has a prior record of conviction of another felony, may be punished as an habitual offender under the provisions of the Code of Criminal Procedure consistent with the 1978 amendment of those provisions stating that "[i]f the subsequent felony is a major controlled substance offense, the person shall be punished as provided" in the Public Health Code. [*Id.* at 271 (emphasis added).]

Notwithstanding the amendment, the Court answered in the affirmative:

> We hold that the legislative purpose [of the 1978 amendments] was to assure that the mandatory [minimum] sentences for the commission of a first or subsequent major controlled substance offense would not be ameliorated as the result of the exercise of discretion regarding the length of sentence provided in the habitual offender provisions in the Code of Criminal Procedure, and not to preclude enhancement of a sentence under the habitual offender provisions that might be imposed on a person who has a record of prior felony conviction, albeit not for a major controlled substance offense.
>
> \*     \*     \*
>
> . . . In providing that a person convicted of a major controlled substance offense shall be punished as provided in the Public Health Code, the Legislature may have been con-

---

[9] While *Franklin* is not discussed in *Primer,* under *Franklin* defendants would be subject to sentencing under the general habitual provisions for a first drug offense.

cerned that a judge reluctant to impose a mandatory sentence provided in the Public Health Code might utilize the habitual offender provisions to eliminate the mandatory sentence on the basis that § 13 provides that the sentence imposed for the underlying offense—the mandatory sentence—shall be vacated and a new sentence imposed.

There is no mandatory minimum sentence, even for a fourth offender, under the habitual offender sentencing provisions. Accordingly, after sentencing a person under the habitual offender provisions to a term less than the mandatory sentence provided for in the Public Health Code, a judge—but for the proviso stating that where the conviction is for a major controlled substance, the person "shall be punished" as provided in the Public Health Code—could vacate the sentence imposed under the Public Health Code and substitute a term of years less than the mandatory sentence provided in the Public Health Code. The legislative purpose may thus have been to obviate such manipulation.

We do not read "shall be punished as provided" in the Public Health Code in this context as meaning that a greater sentence could not be imposed under the habitual offender provisions.

The minimum sentences were well within the one- to twenty-year range provided for in the Public Health Code. Imposing maximum sentences greater than the twenty years provided in the Public Health Code did not violate the statutory edict requiring punishment as provided in the Public Health Code. [*Id.* at 271-275.]

According to *Primer*, the Legislature's intent in enacting the amendment pertaining to major controlled substance offenses was to assure that the mandatory minimum sentences for first or subsequent major controlled substance offenses would not be avoided through the exercise of discretion permitted in fashioning sentences under the general habitual offender provisions. *Primer* at 272. Thus, the addition of the provision was not intended as an exclusion of major controlled substance offenses from the ambit

of the habitual offender provisions, and, therefore, the reference only to major controlled substance offenses (the only controlled substance offenses providing for mandatory minimum penalties) cannot be seen as an implied inclusion of other controlled substance offenses. In short, the amendment did nothing to either enlarge or curtail the scope of the general habitual offender provisions as determined in *Edmonds*, *Elmore*, and *Franklin*.

D

Consistent with the cases discussed above, we conclude that the Legislature did not intend that sentences for subsequent controlled substance offenses be quadrupled by enhancement under both the habitual offender provisions and the controlled substance enhancement provision. A careful reading of the cases reveals three consistent principles. Where a defendant is subject to sentence enhancement under the controlled substance provisions, the sentence may not be doubly enhanced under the habitual offender provisions. *Edmonds; Elmore.* Where a defendant commits a controlled substances offense, but is not subject to the enhancement provisions of the Public Health Code because, although the defendant is an habitual offender, there are no prior controlled substance offenses, enhancement under the habitual offender provisions is permitted. *Franklin; Primer.* Where the legislative scheme pertaining to the underlying offenses elevates the offense, rather than enhances the punishment, on the basis of prior convictions, both the elevation of the offense and the enhancement of the penalty under the habitual

offender provisions is permitted. *Brown; Eilola; Lynch; Bewersdorf.*

Thus, we conclude double enhancement was improper. We vacate defendant's doubly enhanced sentences and remand for resentencing.[10]

V

In a supplemental brief filed in propria persona, defendant argues that he was denied his right to be free from unreasonable searches and seizures and his right to privacy when the trial court failed to suppress the fruits of a search based on an affidavit and warrant alleged to be clearly deficient on its face.

Before trial, defendant moved to suppress the evidence seized at his residence on the ground that the affidavit was invalid on its face. Among other things, defense counsel argued that the document was entitled "AFFIDAVIT FOR SEARCH WARRANT" rather than "SEARCH WARRANT" and did not contain the standard language that directs a specific agency to conduct the search. According to defense counsel, the Supreme Court-approved search warrant form begins, "TO THE SHERIFF OR ANY PEACE OFFICER: [blank space for name of affiant] has sworn to the attached affidavit regarding the following:" The trial court denied defendant's motion, finding that it elevated form over substance.

During the preliminary examination, Officer Rickey testified that he prepared the affidavit and search warrant for the trailer. Rickey explained that the search was the third in a series spanning twenty-six hours. Consequently, Rickey tried to save time in pre-

---

[10] Because we remand for resentencing we need not address defendant's proportionality claim.

paring the warrant by cutting portions from the previous warrants and photocopying them onto new forms. In the process of preparing the warrant, Rickey apparently used the top portion of the affidavit that included the title and omitted the language quoted above.

Reviewing courts should read search warrants and affidavits in a common-sense and realistic manner. *People v Stumpf*, 196 Mich App 218, 220; 492 NW2d 795 (1992), cert den 510 US 1042; 114 S Ct 686; 126 L Ed 2d 654 (1994). Here, the content of the document, including the signed order of the magistrate commanding the search, indicates that the document is a search warrant. Both the warrant and the attached affidavit name Officer Rickey as the affiant. Although the first sentence of the standard search warrant form stating that the affiant has "sworn" to the affidavit was omitted, the first page of the attached affidavit includes a signed and dated attestation by the magistrate that the affidavit was "subscribed and sworn before [him]." It is clear from reading the warrant and the first page of the attached affidavit that the warrant was directed to Officer Rickey, a Kalamazoo Township police officer assigned to the Southwest Enforcement Team. The cases cited by defendant are inapposite because defendant does not claim that the affidavit failed to state probable cause for the search. The trial court's conclusion that the affidavit was valid despite the problems cited by defendant was not clearly erroneous and the trial court properly refused to suppress the evidence seized pursuant to the warrant.

VI

Defendant next argues that his right to be free from unreasonable searches and seizures was violated by the trial court's failure to suppress evidence from a search that was based on the fruits of a previous illegal search.

Before trial, defendant moved to suppress the evidence seized from the storage unit. Defendant argued that because police possessed information about the storage unit before they conducted the search of the trailer, the warrant for the trailer should have specifically stated that police were searching for items related to the storage unit. Thus, defendant argued, the checkbook containing information about the storage unit was improperly seized from the trailer, and the evidence seized from the storage unit should be suppressed because the checkbook was used to establish probable cause for the search. The trial court found that the checkbook was included within the list of items to be searched for and seized at the trailer.

Under both federal law and Michigan law, the purpose of the particularization requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure. MCL 780.654; MSA 28.1259(4); *People v Zuccarini*, 172 Mich App 11, 15; 431 NW2d 446 (1988). The degree of specificity required depends on the circumstances and types of items involved. *Id.* The search warrant for the trailer included, by reference to the attached affidavit, the following items:

1. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, marijuana and other controlled dangerous substances.

\*    \*    \*

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts and cashiers checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment, and/or expenditure of money.

We conclude that the checkbook seized at the trailer fell within the items described. *Zuccarini, supra* at 15-16. Although the warrant could have been more specific, it was sufficient.

VII

Defendant last argues that he was denied his right to an impartial jury when a juror took part in a discussion at her neighbor's house, during trial, about defendant's criminal history. Under the circumstances presented here, we disagree. This Court granted defendant's motion to remand to allow defendant to move for a new trial on the ground that he was denied his right to an impartial jury. An evidentiary hearing was held, and the trial court denied his motion. In *People v Nick*, 360 Mich 219, 230; 103 NW2d 435 (1960), our Supreme Court set forth the standard of review where there is an allegation of juror misconduct:

[I]t is well established that not every instance of misconduct in a juror will require a new trial. The general principle

underlying the cases is that the misconduct must be such as
to affect the impartiality of the jury or disqualify them from
exercising the powers of reason and judgment. A new trial
will not be granted for misconduct of the jury if no substan-
tial harm was done thereby to the party seeking a new trial,
even though the misconduct is such as to merit rebuke
from the trial court if brought to its notice.

The Court further stated that it had repeatedly recog-
nized that to justify the granting of a new trial "error
must appear affirmatively." *Id.* at 227. Prejudice must
be shown, or facts clearly establishing the inference
that it occurred from what was said or done. *Id.*; *Peo-
ple v Hayes*, 126 Mich App 721, 729; 337 NW2d 905
(1983). Before this Court will order a new trial on the
ground of juror misconduct, some showing must be
made that the misconduct affirmatively prejudiced
the defendant's right to a trial before an impartial and
fair jury. *People v Provost*, 77 Mich App 667, 671; 259
NW2d 183 (1977), rev'd on other grounds 403 Mich
843 (1978).

The trial court found the juror to be a credible wit-
ness and believed her testimony that she left immedi-
ately after her neighbor began to talk about defend-
ant. Credibility is a matter for the trial court, as the
trier of fact, to decide. *People v Daniels*, 172 Mich
App 374, 378; 431 NW2d 846 (1988). The court found
the neighbor and a friend to be less credible because
of their connections to defendant. The neighbor had
known defendant for about forty years; the friend had
been a friend and hunting partner of defendant's girl-
friend for about three years, and had stored some of
defendant's belongings for him the last time defend-
ant was in jail, although he claimed that he only met
defendant twice.

The facts of this case are similar to those in *People v Strand*, 213 Mich App 100; 539 NW2d 739 (1995), where the defendant moved for a new trial after two jurors testified in a post-trial hearing that they learned during the course of the trial that the defendant had a prior sexual assault conviction. This Court found that the trial court did not abuse its discretion in denying the defendant's motion because the jurors testified that they did not disclose the information to the other jurors. *Id.* at 104. In addition, the jurors stated that the information did not affect the impartiality of their verdicts because they questioned whether the information was true. *Id.* As in *Strand*, the juror here testified that she did not share the information about defendant's prior drug offenses with the other jurors. Although she did not testify whether she believed the information to be true, she testified that what she heard did not affect her decision.[11]

We conclude that the trial court did not err in its determination that the juror's impartiality was not impaired, and that defendant was not entitled to a new trial.

Defendant's underlying convictions are affirmed, and the matter is remanded for resentencing.

We do not retain jurisdiction.

---

[11] The trial court erroneously found that nothing was said about defendant. This error notwithstanding, under the circumstances presented here, we conclude that the incident was not such that it affected the impartiality of the jury. *Nick, supra* at 230.