# STATE OF MICHIGAN

# COURT OF APPEALS

KORBIN J. STOKES,

      Plaintiff/Counterdefendant-
      Appellee,

v

CHALEXIS J. TYSON-BRADLEY,

      Defendant/Counterplaintiff-
      Appellant.

UNPUBLISHED
October 4, 2018

No. 342064
Berrien Circuit Court
LC No. 16-003804-DC

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, Chalexis J. Tyson-Bradley, appeals as of right from the trial court's order granting plaintiff, Korbin J. Stokes, sole physical custody of their daughter, KS. We affirm.

## I. BASIC FACTS

KS is the only child of plaintiff and defendant, who were never married. Plaintiff filed a complaint to establish custody, parenting time, child support, and entry of an ex parte order preserving the status quo. Plaintiff asserted that he had been the primary caretaker of KS in Berrien County, while defendant finished her college degree in Dayton, Ohio. When defendant returned to Berrien County after completion of her degree, the parties shared caretaking responsibilities, with KS spending the majority of her overnights with plaintiff. Defendant planned to relocate herself and KS to Columbus, Ohio, on October 22, 2016. As a result, plaintiff requested sole legal and physical custody of KS.

Defendant answered plaintiff's complaint and filed a counterclaim for custody. She contended that plaintiff was aware of her move to Ohio, and that plaintiff offered his assistance in selecting a Columbus school for KS. Defendant argued that it was not in KS's best interests to grant sole physical custody to plaintiff because he made several miscalculated and irrational decisions pertaining to employment without considering KS, became aggravated when KS was emotional, and was also impatient when assisting with educational matters. Therefore, defendant argued it would be in KS's best interests to award primary physical custody to defendant and grant legal custody to both parties.

-1-

Following a two-day bench trial, the trial court ruled from the bench, going over each of the statutory best-interest factors and granting legal custody to both parties and primary physical custody to plaintiff, with parenting time for defendant. This appeal followed.

## II. ANALYSIS

Defendant first argues that the trial court abused its discretion in limiting the presentation of her case. As our detailed review of the record reveals, this claim was waived and there is no "error" to review.

On October 3, 2017, the first day of trial, defense counsel identified three potential witnesses: Latrice Martin, Whitney White,[1] and Mary Young. According to counsel, Ms. Young was anticipated to testify by telephone per agreement with plaintiff's former counsel. As noted by the court, plaintiff had represented himself for a substantial period of time and defense counsel admitted he had not discussed the presentation of telephone testimony with plaintiff. When the court inquired whether plaintiff would be opposed to presenting Ms. Young's testimony via telephone, he objected because Ms. Young had "no historical insight."

Thereafter, plaintiff's parents testified. The court then conferenced with the parties, asking if plaintiff would agree to call defense witness White, who lived out of town, out of order. Plaintiff agreed. After White testified, the court scheduled an additional hearing date. The court also indicated it would accept testimony from defendant via telephone and permit the parties to discuss accommodating other teachers' testimony.

On October 24, the trial resumed. Defendant's attorney specifically stated he was not going to call Ms. White, who was present. Upon the court's inquiry, defense counsel said he was going to call his "client, maybe, potentially, and" plaintiff, but they "could probably resolve that."

Plaintiff resumed his case-in-chief and, ultimately, opted not to testify. Defense counsel then called defendant and asked the court whether it wanted time to make its decision on the record that afternoon or whether it planned on the parties returning. Defense counsel explained he was seeking a timeframe for his questioning. The court indicated counsel should be "as expeditious as" he could and, if the court could, it would rule. However, the court also stated: "I won't know until we – until we finish. You be as expeditious in presenting your case as you choose to," and "then we'll see where we are."

About eighty minutes later, defense counsel stated: "All right. Judge, I think I'm kind of at a point whether I either can stop or . . ." At which point, the court interrupted, indicating its assumption that counsel was not finished. Defense counsel responded:

Yeah. He's not going to – I don't know how much cross he has, but I would probably just – so I don't miss anything, **just ask to stop at this point**. [Emphasis added.]

---

[1] When Ms. White testified, she called herself Whitney Barkley.

The court indicated proofs had not been completed as plaintiff had not had the opportunity for cross-examination and that it would be asking defense counsel about rebuttal.

Following a bench conference, the court explained it needed to interview KS to determine her preference if it determined KS was of sufficient age to express one. The court scheduled an *in camera* interview with KS for November 3, asking the parties to work out timing. At that point, the following exchange occurred:

*The Court:* So, again, clearly we're not finished today. It's nothing more than Factor (i) [the preference of the child]. But what I anticipate is, Mr. Stokes, you certainly have the opportunity for cross-examination. It does not appear that you have concluded even with your –

*Mr. Fletcher* [defense counsel]: I'm fairly close.

*The Court:* – client at this point, but we'll have that, and we'll have cross, and we'll certainly secure that next date that allows us to have everything concluded. Unfortunately, it's not going to be the 3rd just because of other matters that are scheduled. And I think we have three that afternoon, one of which is yours, Mr. –

*Unidentified Speaker:* (Inaudible.)

*The Court:* The only bright light flickering, perhaps, Mr. Fletcher, is if you and counsel are able to resolve your [other] matter that was before the Court today. I don't know; you walked out fairly adamant that there was no agreement, so if there's no agreement, then that's still scheduled. If you're able to bring that to some conclusion, the Court could, with the minor child's transportation on the 3rd, make adjustments consistent with trying to wrap this up that afternoon. Just so you're aware that that's –

*Mr. Fletcher:* I'll keep that regardless of my calendar. So with that in mind –

*The Court:* Well, just if there's a real possibility. Hopefully there will be some impetuous to get something scheduled, even if it's the other one, then we can bring this one to conclusion as well, okay?

*Mr. Fletcher:* Right. Okay. Yep.

\* \* \*

*The Court:* And the other, I just gave you that for information purposes, Mr. Fletcher, okay?

*Mr. Fletcher:* All right. Thank you.

On December 12, the trial court entered the following order:

THE COURT FINDS:
1. The Bench Trial in above mentioned file continued on October 24, 2017.

-3-

2. The minor child in this matter has participated in an in camera interview.

THE COURT THEREFORE ORDERS:

3. Closing arguments and decision is set for December 18, 2017 at 2 p.m., Berrien County Courthouse, Courtroom 405, St. Joseph Michigan.

The court's proof of service reflects this order was served upon the attorney or parties of record by hand delivery. Defendant's copy, which is attached to her brief on appeal, contains a handwritten notation, reflecting it was "emailed to client."

On December 18, plaintiff and defense counsel appeared; defendant was not present. The court stated: **"[T]his matter is before the Court for purposes of a decision . . . ."** (Emphasis added.) The court then read its ruling into the record. The court considered the testimony of the witnesses, including defendant. And, in describing the procedural history of the case, the trial court stated that "trial commenced [on] October 4, conclude[ed] on October 24," and it interviewed KS regarding her preference thereafter.

Following the court's ruling, plaintiff inquired about waiving child support arrearages. Defense counsel believed defendant would be amenable, but thought he should talk to her first. Notably, this led to the following exchange:

*The Court:* All right. And that's fine because that was not a matter before the Court –

*Mr. Fletcher:* Right.

*The Court:* – it was for purposes of decision only.

*Mr. Fletcher:* Right.

\* \* \*

*The Court:* Anything else then, Mr. Fletcher? I think that's everything, Mr. Stokes?

*Mr. Fletcher:* No.

On appeal, defendant's appellate counsel, who was not defendant's trial counsel, recognizes the court's ability to control the interrogation of witnesses under MRE 611(a),[2] but argues that the court interfered with defendant's ability to finish out her own testimony and to

---

[2] MRE 611(a) provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

-4-

present additional witnesses, namely, plaintiff and Ms. Young.[3]  Defendant suggests her claim was preserved or, at worst, unpreserved, and reversal is required because her due process right to be heard was violated.

This Court generally reviews "a trial court's exercise of its power to control the interrogation of witnesses" for an abuse of discretion. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 615; 792 NW2d 344 (2010).  A trial court "abuses its discretion if its decision is outside the range of principled outcomes." *Id*. at 620 (quotation marks and citation omitted). However, when an issue is unpreserved, this Court reviews for plain error affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008).  "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*. (quotation marks and citations omitted).  "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

However, " '[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.' " *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), quoting *United States v Griffin*, 84 F3d 912, 924 (CA 7, 1996).  "It is presumed that waiver is available in a broad array of constitutional and statutory provisions . . . ." *Carter*, 462 Mich at 217-218 (quotation marks and citations omitted). And "[w]hile the defendant must personally make an informed waiver for certain fundamental rights such as the right to counsel or the right to plead not guilty, for other rights, waiver may be effected by action of counsel." *Id.* at 218.

That is the case here.  At the end of the December 18 hearing, consistent with the court's December 12 order and after the court's November 3 scheduled *in camera* interview to determine KS's preference, counsel agreed with the court that the case was set "only" for a decision.  Moreover, despite the court's explicit inquiry, defense counsel said he had nothing further, failing to object to the trial court's earlier statement that trial "conclud[ed] on October 24th."  Defense counsel's statements and actions were "unequivocal indications" that he approved of a course of action taken in the trial court and constitute a waiver. See, e.g., *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011); *Marshall Lasser, PC v George,* 252 Mich App 104, 109; 651 NW2d 158 (2002) ("Plaintiff cannot now be heard to complain about the lack of a jury trial on the issue of damages, when by its own unequivocal conduct it waived this right."); *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998) (holding that a defendant could not "expressly acquiesce[ ] to the [trial] court's handling of" a matter "and then raise it as an error before this Court").  "To hold otherwise would allow counsel to harbor error at trial and then use that error as an appellate parachute[.]" *Kowalski*, 489 Mich at 505 (quotation marks and citation omitted).  See also *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989) ("A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to

---

[3] As just discussed, although defense counsel had mentioned plaintiff as a potential witness at the October 24 hearing, he did not mention Ms. Young.

harbor error as an appellate parachute."). Because defense counsel waived any "error," it was extinguished.

But, even if we agreed that the issue was unpreserved by defense counsel's failure to object to the court's December 12 order or December 18 proceedings, or to file a motion for reconsideration, any error did not affect defendant's substantial rights.[4] This holds true for several reasons. First, to the extent that defendant argues that she was precluded from presenting additional witnesses at trial, she told the trial court on October 24, 2017, that she planned to call herself and possibly plaintiff as witnesses. Defendant also indicated that she no longer planned to call Martin, who was then released from the sequester order. Defendant did not indicate that she would be calling any other witnesses, including Ms. Young. As a result, with the exception of possibly plaintiff, the trial court did not preclude defendant from presenting any planned witnesses.

Second, defendant does not explain what additional testimony she or plaintiff would have offered or how it would have made a difference in the outcome of trial. In its ruling, the trial court noted evidence regarding the support that KS received in Michigan from plaintiff, her paternal grandparents, and other extended family members. The trial court was also aware that defendant earned more income in Ohio, that she had stable housing, and that she had a growing support system. Therefore, any additional testimony would likely not have changed the outcome of the trial. See *Carines*, 460 Mich at 763; MCR 2.613(A). See also *Alpha Capital Mgt*, 287 Mich App at 619 (stating that because the plaintiff failed to explain the importance of the proposed "areas of inquiry or the manner in which their foreclosure prejudiced its case," the plaintiff "failed to prove that the trial court's time limitation affected its substantial rights").

Next, defendant contends that the trial court erred in using the incorrect evidentiary standard in its analysis of the best-interest factors.

"This Court must affirm all custody orders unless the trial court's findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). Further, "[u]nder the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). "In child

---

[4] See also MCR 2.613(A), which states that:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

custody cases, [a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id.* (quotation marks and citation omitted; alteration in original). "Clear legal error occurs when the trial court errs in its choice, interpretation, or application of the existing law." *Id.* (quotation marks and citation omitted). Finally, "[w]hether an established custodial environment exists is a question of fact that [this Court] must affirm unless the trial court's finding is against the great weight of the evidence." *Berger*, 277 Mich App at 706.

"[A] trial court is required to determine whether there is an established custodial environment with one or both parents before making *any* custody determination." *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). "When a modification would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest." *Shade*, 291 Mich App at 23. On the other hand, "[i]f the proposed change does not change the custodial environment . . . the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id.*

The trial court found, and neither party disputes, that an established custodial environment existed with both parties. Because an established custodial environment existed with both parties, "*neither* plaintiff's nor defendant's established custodial environment may be disrupted except on a showing, by clear and convincing evidence, that such a disruption is in the [child's] best interests." *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d 363 (2001).

Here, the trial court granted sole physical custody to plaintiff and provided defendant with parenting time on school breaks, alternating holidays, and one weekend a month, which would result in a change of defendant's established custodial environment. Contrary to defendant's argument, however, the trial court twice recognized that the applicable burden of proof was clear and convincing evidence. Although the trial court stated that the decision was "not a difficult one," that was merely a reflection of its findings under the best-interest factors that mostly favored plaintiff. It was not a rejection of, or statement in defiance of, the proper burden of proof.

Finally, defendant asserts that the trial court's findings in regard to the best-interest factors, specifically factors (b), (e), and (h), were against the great weight of the evidence. The trial court's findings as to the challenged best-interest factors were not against the great weight of the evidence. "In making a custody determination, a trial court is required to evaluate the best interests of the children under the 12 statutorily enumerated factors" listed in MCL 722.23. *Kessler*, 295 Mich App at 63-64. MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

The trial court's specific findings in regard to the challenged factors were not against the great weight of the evidence. The trial court found that factors (b) and (h) both slightly favored plaintiff. Factor (b) is the capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any. Factor (h) is the home, school, and community record of the child. The trial court did hear testimony from defendant that she was involved in KS's school activities. However, the trial court found O'Connell's testimony regarding the parties' education involvement credible. The trial court also acknowledged that KS would thrive in any appropriate academic environment.

Considering the evidence presented at trial, the trial court's findings concerning factors (b) and (h) were not against the great weight of the evidence. See *Berger*, 277 Mich App at 705.

The fact that the trial court found the testimony of one witness more credible than another does not constitute error. See *id*. ("This Court will defer to the trial court's credibility determinations . . . ."). Further, as already discussed, defendant did not state that she was going to call Young to testify at the October 24, 2017 hearing. As a result, it appears that she would not have called Young to testify even if she had the opportunity to do so. Consequently, the trial court's finding that factors (b) and (h) slightly favored defendant was not against the great weight of the evidence.

In regard to factor (e), the permanence, as a family unit, of the existing or proposed custodial home or homes, the trial court concluded that this factor slightly favored plaintiff. The trial court noted that both parties were young with great opportunity for major life changes, but this factor slightly favored plaintiff on the basis of the "current continuing circumstances." Although the trial court failed to fully explain its reasoning, this finding was not automatically against the great weight of the evidence. The evidence showed that before KS moved to Ohio, she spent most of her life in the home of James and Angela with some overnights at the parties' separate apartments when they had them. The testimony showed that James and Angela were very involved in KS's life. Although it was unclear from the testimony whether plaintiff still lived with James and Angela at the time of trial, it seemed clear that they would be a large part of her life again if she returned to Michigan. Therefore, the trial court's finding was not against the great weight of the evidence.

Affirmed.


/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica