*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 26, 2021

Plaintiff-Appellee,

v

No. 353118
Kalamazoo Circuit Court
LC No. 2019-001310-FH

DESHAWN DORAL GRISWOLD,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of possession with intent to deliver methamphetamines, MCL 333.7401(2)(b)(*i*); unlawfully driving away a motor vehicle (UDAA), MCL 750.413; and possession of oxycodone, MCL 7403(2)(b)(*ii*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 9 to 40 years for the possession with intent to deliver methamphetamine conviction, 1 to 15 years for the UDAA conviction, and 1 to 15 years for the possession of oxycodone conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was arrested while driving a stolen vehicle that held multiple controlled substances, including 16.06 grams of methamphetamine and a partial oxycodone pill. Several Kalamazoo Department of Public Safety (KDPS) officers testified that, on the day of defendant's arrest, they were doing surveillance as part of the Kalamazoo Valley Enforcement Team (KVET) and observed defendant alone in an SUV parked in a grocery store parking lot. Defendant then drove across the street to park at a restaurant. KDPS Investigator Ben Ulman testified that he saw defendant go inside the restaurant and return to the passenger side of the SUV approximately four times. KDPS and KVET Investigator John Khillah testified that he had Kalamazoo Central Dispatch run the SUV's license plate through the Law Enforcement Information Network, which showed that the SUV was a rental car that had been reported stolen. KDPS Officer John Resseguie was told to detain the driver of the SUV; but when Officer Resseguie arrived at the restaurant, he was uncertain which of the three people near the SUV was the driver. Officer Resseguie spoke

-1-

with defendant, who was one of the three; he denied knowing anything about the SUV. As Officer Resseguie began to search the SUV, defendant walked away.

In the center console of the SUV, Officer Resseguie found what was later identified as 16.06 grams of methamphetamine, a digital scale with methamphetamine and cocaine residue on it, and lottery tickets (or betting slips). He also found cigars and lottery tickets in the center cupholders; marijuana and a partial oxycodone pill in the driver's side door; mail reflecting defendant's name in the back pocket of the driver's seat; a broken iPhone in the passenger seat; and two phone charging cables. Investigator Khillah testified that 16.06 grams of methamphetamine was "definitely a distribution amount," as it had a value of approximately $3,200 and provided approximately 160 individual doses of methamphetamine. He added that one of the baggies in the SUV contained a larger chunk of methamphetamine, which was "typically how it comes off and if you're getting it from the kilo or the pound." Investigator Khillah opined from the fact that the methamphetamine, scale (which is commonly used to weigh narcotics for individual sale), and lottery tickets (which are commonly used to package narcotics for sale) were found together in a spot easily accessible to the driver, that a dealer was operating a "one-stop shop" to weigh the methamphetamine, package it, and hand it to a customer.

KDPS Officer Joe Dusenbery located and arrested defendant, and KDPS Investigator Scott Bogard told defendant that he was being arrested because there were controlled substances in the SUV. Although Investigator Bogard did not specify what type of substance was found, defendant responded, "Look at me, does it look like I do meth[?]" Investigator Bogard searched defendant and found $1,200 in cash and a cellular phone. The money was not in a wallet, and 50 of the bills were $20 bills. Investigator Bogard testified that in his experience, $20 bills are commonly used in narcotics sales. Defendant did not claim to have borrowed the SUV from another person.

Anthony Noyes (Noyes), an assistant branch manager at Hertz Rental, testified that he received a call from KPDS officers telling him that the stolen SUV had been found. He looked up the SUV and found that it had not been returned when it was due. The renter was not defendant, and defendant was not listed as an authorized user. Noyes testified that Hertz had reached out to the renter numerous times, but the renter did not return the SUV, so Hertz had reported the SUV as stolen.

The jury convicted defendant as described. This appeal followed.

II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to convict him of possession with intent to deliver methamphetamine. We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We view the "evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. We must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). The elements of a crime may be proven by circumstantial evidence and reasonable inferences from that evidence. *Id*. "All

conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 715 NW2d 57 (2008). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id*. The prosecution is not required to "negate every reasonable theory consistent with the defendant's innocence," so long as the prosecution proves beyond a reasonable doubt its own theory "in the face of whatever contradictory evidence the defendant may provide." *People v Carson*, 189 Mich App 268, 269; 471 NW2d 655 (1991).

MCL 333.7401(2)(b)(*i*) provides that a "person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver" methamphetamine. "Possession may be either actual or constructive, and may be joint as well as exclusive." *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998). A defendant need not have physical possession of the controlled substance; rather, the question is "whether the defendant had dominion or control over the controlled substance." *Id*. "Possession may be found even when the defendant is not the owner of recovered narcotics." *People v Wolfe*, 440 Mich 508, 520; 441 Mich 1201 (1992). Mere presence near the drugs is insufficient to prove constructive possession; instead, the prosecution must show an additional connection between the defendant and contraband. *Wolfe*, 440 Mich at 520. Although presence at a location is not alone sufficient to establish constructive possession, circumstantial evidence and reasonable inferences may be used to establish possession. *Fetterley*, 229 Mich App at 515. A defendant does not need to have actually delivered a substance in order for the jury to find that he or she had the intent to deliver. *Id.* at 517. The intent may be inferred from the circumstances, including the quantity of the controlled substance and the way it was packaged. *Id*. at 517-518. "Possession with intent to deliver can be established by circumstantial evidence and reasonable inferences arising from that evidence, just as it can be established by direct evidence." *Wolfe*, 440 Mich at 526.

In this case, Investigator Khillah testified as an expert witness in drug distribution and user paraphernalia. He explained that drug dealers will often carry a lot of cash, have multiple cell phones, and use a vehicle that is not registered to them. He also explained that methamphetamine dealers often use digital scales to measure the methamphetamine and will package it in receipts or lottery tickets. He testified that people who used methamphetamine will generally only buy a daily supply at a time until they can get more money, because they will "squander away every bit of money," and that it is rare for them possess more than 3.5 grams of methamphetamine at a time. Additionally, the jury heard evidence that defendant was seen as the only occupant of the SUV, that he was seen driving the SUV, and that mail reflecting defendant's name was found in the SUV. The methamphetamine found in the SUV was a large amount that was found near a digital scale and lottery tickets.

Viewed in the light most favorable to the prosecution, the evidence was sufficient to establish that defendant possessed the methamphetamine and had the intent to deliver it. See *Meissner*, 294 Mich App at 452. Although defendant argues that the prosecution did not prove beyond a reasonable doubt that defendant knew the methamphetamine was in the center console of the SUV, the evidence at trial supports the jury's finding that defendant had knowledge of the methamphetamine. See *Wolfe*, 440 Mich at 520. Multiple officers testified that they saw defendant as the only person inside the SUV. See *id*.; *People v Nunez*, 242 Mich App 610, 616-617; 619 NW2d 550 (2000). Investigator Resseguie saw a large amount of drugs in the center console of the SUV, and found mail in the SUV that had defendant's name on it. The evidence

supported the inference that defendant was aware of, and constructively possessed, the contents of the SUV he occupied. See *People v Hardiman*, 466 Mich 417, 422-423; 646 NW2d 158 (2002).

Further, when Investigator Bogard told defendant that they had found a controlled substance in the car, he did not specify what type of substance; nonetheless, defendant said, "Look at me, does it look like I do meth." Moreover, Investigator Resseguie testified that defendant gave him a false name, would not provide his birthday, and denied any connection to the SUV, even after multiple officers saw him driving it. Officer Dusenbery and Investigator Khillah testified that they saw defendant walk away from the SUV when Investigator Resseguie started looking inside the SUV. These actions support the inference that defendant was aware of the illegal contents of the SUV. See *Wolfe*, 440 Mich at 522-524.

It was reasonable for the jury to find that defendant had "dominion and control" over the methamphetamine in the SUV. See *Fetterley*, 229 Mich App at 515. Therefore, the prosecution presented sufficient evidence from which the jury could find beyond a reasonable doubt that defendant knew about and possessed the methamphetamine. See *Meissner*, 294 Mich App at 452.

Defendant also specifically argues that there was insufficient evidence to find that he had the intent to distribute the methamphetamine. Again, we disagree. Investigator Ulman and Investigator Khillah testified that they watched defendant go back and forth between the SUV and the restaurant multiple times. Investigator Khillah testified to his expert opinion that defendant had "multiple contacts indicative of drug transaction requests." Investigator Bogard thought that defendant was selling, rather than using, methamphetamine, because defendant did not physically resemble a methamphetamine user and there was no drug paraphernalia in the car. Investigators Bogard and Khillah each further testified that the amount of cash that defendant had and the denominations of the cash were common for someone selling narcotics rather than using them. And Investigator Khillah testified that it was common for dealers not to carry a wallet or identification or to drive a vehicle not registered to them, and that dealers usually had multiple phones; all were true of defendant.

Investigator Khillah further explained that methamphetamine dealers often package methamphetamine into something like a receipt or lottery ticket when selling it, and that lottery tickets were found in the SUV. The digital scale found in the SUV had the residue of two different controlled substances on it; Investigator Khillah testified that it was unusual for a user to possess other drugs than the one to which they were addicted, but that it was common for dealers to have more than one type of controlled substance for sale. Investigator Khillah also testified that the amount of methamphetamine found was a "distribution amount of crystal methamphetamine." See *Hardiman*, 466 Mich at 422; *Fetterley*, 229 Mich App at 518. In sum, the prosecution presented sufficient evidence from which the jury could find beyond a reasonable doubt that defendant had the intent to deliver methamphetamine.[1] See *Meissner*, 294 Mich App at 452.

---

[1] In his brief on appeal, defendant briefly states that he was "authorized by the renter" to use the SUV and that no evidence was presented that defendant knew the SUV had been reported as stolen. Defendant also states that there was no evidence that he "had any idea that he possessed ½ of a

-4-

## III. ADMISSION OF PHOTOGRAPHS

Defendant also argues that the trial court abused its discretion when it admitted photographs showing the controlled substances seized from the SUV next to mail reflecting his name. We disagree.

"This Court reviews de novo both constitutional claims and any preliminary questions of law regarding admissibility of evidence." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). We review for an abuse of discretion a trial court's decision to admit photographic evidence. *People v Anderson*, 209 Mich App 527, 536; 531 NW2d 780 (1995). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). Reversal is only required when the defendant has shown that "it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

"The decision to admit or exclude photographs is within the sole discretion of the trial court." *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995). Photographs may be used to corroborate witnesses' testimonies and "are not excludable simply because a witness can orally testify about the information contained in the photographs." *Id*.

Under MRE 401, relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible, MRE 402, but the trial court may exclude even relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

---

very small pill in the door of the vehicle." To the extent that these statements are arguments concerning the sufficiency of the evidence in support of his UDAA and possession of oxycodone convictions, we note that defendant did not present these issues in his statement of issues presented. See MCR 7.212(C)(5); *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009). Further, defendant has not supported his factual statements with any citation to the record or his legal arguments with any citation to authority, and has therefore abandoned them. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009); *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). In any event, the evidence presented at trial was sufficient for a reasonable jury to conclude that he possessed the oxycodone found in the SUV, for the same reasons as supported the conviction for possession with intent to deliver methamphetamine. And the evidence at trial showed that: defendant was in possession of the SUV nearly two months after it was reported stolen; the SUV contained rental documents showing that it had been rented to a person other than defendant; the renter had reported the SUV stolen; defendant denied ownership of the SUV to police officers and initially gave them a false name; and defendant provided no evidence that he believed he had the permission of either the renter or the rental company to use the SUV. Although defendant challenges the strength of this evidence, we do not interfere with the jury's prerogative to determine the weight of evidence or credibility of witnesses. *Kanaan*, 278 Mich App at 619. Under these circumstances, a reasonable jury could conclude beyond a reasonable doubt that defendant was guilty of UDAA. See *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (2003); *Meissner*, 294 Mich App at 452.

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. See also *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010). Unfair prejudice exists when a jury will give minimally probative evidence undue weight, or when it would be otherwise inequitable to admit the evidence. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). However, prejudice requires more than that the evidence is merely damaging to a party's case; a party's case "is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). "The determination of whether the probative value of evidence is substantially outweighed by its prejudicial effect is best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony." *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). Photographs are properly excluded if they are solely used to " 'arouse the sympathies or prejudices of the jury . . . particularly if they are not substantially necessary or instructive to show material facts or conditions.' " *People v Eddington*, 387 Mich 551, 562; 198 NW2d 297, quoting 29 Am Jur 2d, Evidence, § 787, pp 860-861.

In this case, the trial court did not abuse its discretion when it admitted the challenged photographs. See *Anderson*, 209 Mich App at 536. Defendant argues that "juxtaposition of the drugs next to [defendant]'s mail was highly prejudicial, cumulative and should not have been admitted" because it caused "subliminal confusion." However, two of the photographs were specifically relevant to the consideration of whether defendant had the intent to distribute the methamphetamine, as they clearly showed the methamphetamine's packaging. Moreover, although the mail was visible in the background, defendant's name was not visible. See *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). Therefore, the probative value was not substantially outweighed by the danger of unfair prejudice and the trial court did not abuse its discretion by admitting them. See *Anderson*, 209 Mich App at 536.

The third photograph presents a closer question. The photograph again showed the methamphetamine next to defendant's mail, this time with his name clearly visible. Sergeant Ferguson testified that the officers took a picture of the mail to identify the evidence, but he was not sure why they put the mail next to the drugs for the photographs, and he specifically testified that the exhibit did not show where the items were found. Other exhibits showed where the items were located and one photograph showed the mail alone, serving the purpose of identifying it without combining it with any other evidence. Therefore, the photograph of the methamphetamine with the mail was cumulative of other exhibits that captured the scene and evidence; moreover, the inclusion of this photograph could have suggested that the items were found in the same location in the SUV, which they were not. See *People v Collier*, 168 Mich App 687, 692; 425 NW2d 118 (1988).

On balance, even if this photograph did present a risk of unfair prejudice, we find that the probative value of the photograph was not substantially outweighed by that risk. Of all the photographs admitted into evidence, this photograph most clearly shows that the methamphetamine was packaged in a bag containing smaller, individual packages of methamphetamine, which was an instructive illustration for jurors unfamiliar with the packaging of controlled substances. See *Anderson*, 209 Mich App at 536. Therefore, this information was probative of whether defendant had intent to deliver methamphetamine. See *Gayheart*, 285 Mich App at 227. Further, Officer Resseguie's testimony reduced the risk of unfair prejudice; he testified that it was common to gather evidence together for purposes of a photograph, as well as

to photograph the evidence where it was found, and he also clearly testified about where the various items were originally found.  The jurors also viewed photographs showing the mail and substances in their original locations.

We conclude that the trial court did not abuse its discretion by admitting any of challenged photographs.  See *Anderson*, 209 Mich App at 536.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane M. Beckering
/s/ Mark T. Boonstra