*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 29, 2024

v

DENNIS PATRICK BRINGARD,

Defendant-Appellant.

No. 363480
Cheboygan Circuit Court
LC No. 2021-006092-FC

Before: O'BRIEN, P.J., and CAVANAGH and SHAPIRO*, JJ.

PER CURIAM.

A jury found defendant guilty of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration with a person under 13 years of age and defendant 17 years of age or older); and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (sexual contact with a person under 13 years of age and defendant 17 years of age or older). Defendant appeals his convictions as of right. We affirm.

## I. BACKGROUND

This case involves two separate instances of sexual abuse perpetrated by defendant against the victim, ET. Defendant is the stepfather of ET's mother, Theresa Duffin. ET viewed defendant and his wife, Debbie Bringard, as her grandparents. Duffin and ET's father were separated, and ET spent time between each parent's residence. Duffin lived at defendant and Debbie's residence, which was a duplex. ET and Duffin occupied the upstairs apartment, and Duffin's two sons occupied the bottom apartment with defendant and Debbie. ET and Duffin both testified that, on December 14, 2018, Duffin picked ET up from defendant and Debbie's residence to go shopping. While shopping, ET was upset and wanted to tell Duffin something but was afraid to do so. After reassurance from Duffin, ET disclosed defendant's two instances of sexual abuse. ET believed that both instances had occurred approximately one year prior to her disclosure to Duffin.

Both instances occurred at defendant and Debbie's residence. ET described how, during the first instance, she and defendant were on the living-room couch together lying on their sides under a blanket when defendant pulled down ET's underwear and put his penis inside of ET's

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

anus. Defendant also touched ET's vagina. ET testified that both of her brothers were present in the room and that defendant stopped once Duffin returned home. The second instance occurred in defendant's bedroom while ET was watching TV. ET believed that she and defendant were once again lying side by side and covered by a blanket, and ET described how defendant put his penis inside ET's anus. ET did not remember when defendant stopped, but she thought it might have been when Duffin came back from work.

Duffin informed ET's father of ET's disclosure, and the two contacted law enforcement and Children's Protective Services (CPS). ET underwent an initial interview at the Child Advocacy Center, but due to her emotional state, she was unable to disclose the abuse. Heather Horan, the CPS worker for this case, testified that no medical examination of ET was performed primarily because of ET's emotional state. Officer Joseph Derry, the investigator for this case, and Kellie Sefernick, who interviewed ET at the Child Advocacy Center, testified similarly. Officer Derry testified that due to the amount of time that had passed since the alleged abuse, a medical examination of ET would not be beneficial, and Sefernick testified that very few of the medical examinations performed at her facility revealed any injury.

Officer Derry asked both parents to write out statements of what ET had disclosed, which were admitted into evidence at trial without objection. ET underwent counseling and was eventually able to complete a written statement in which she disclosed defendant's abuse. Her statement was admitted into evidence at trial without objection.

Prior to trial, defendant stipulated to ET testifying in a separate room and having her testimony viewed in the courtroom via Zoom. It was also agreed that the prosecution and defense counsel would be in the room with ET during her testimony.

During jury selection, the trial judge disclosed that one of the prospective jurors, Roger Gauthier, was the judge's uncle. The trial judge questioned Juror Gauthier about whether his relationship to the judge would have any effect on him as a juror in the following exchange:

> THE COURT: Mr. Gauthier, I don't have any opinions about this case and it's not my job to express opinions. So, the fact that I'm your nephew would that have any bearing on your service in this case?
>
> JUROR GAUTHIER: Absolutely not.
>
> THE COURT: All right. If you believed that I had an opinion about the case, would you hesitate for a moment in reaching a verdict that you thought was contrary to my opinion?
>
> JUROR GAUTHIER: You know me, no.
>
> THE COURT: All right. All right. I just wanted to cover that (inaudible).

Both the prosecution and defense counsel questioned Juror Gauthier, but neither party raised any concerns or challenges. On the second day of trial, Juror Gauthier was excused from the jury because he had tested positive for COVID-19. He consequently did not take part in deliberations. The jury found defendant guilty as previously stated.

After sentencing, defendant filed a voluminous motion for a new trial or *Ginther*[1] hearing, arguing that his trial counsel had been ineffective throughout trial. Relevant to this appeal, defendant contended that his trial counsel was ineffective by failing to object to multiple pieces of inadmissible evidence, challenge Juror Gauthier, or consult with or call an expert witness for the defense. Defendant also argued that his trial counsel was ineffective for failing to ensure that defendant could adequately hear and understand the trial in light of defendant's extensive hearing issues—one of his ears was deaf and the other did not function well. Defendant's motion alleged that, due to his hearing issues, he had learned to read lips, but he was unable to read lips during trial because the attorneys and some witnesses turned their backs to defendant. Defendant contended that these conditions were exacerbated during ET's testimony because she was in a separate room and defendant was separated from his trial counsel. Defendant additionally alleged that he was twice provided hearing aids during trial—once by his sister and once by a court deputy—but neither pair of hearing aids helped. Defendant submitted affidavits from himself, his sister, and Debbie to establish the factual basis for his claims.

The prosecution filed a response contending that none of defendant's arguments warranted a new trial and that defendant's motion was filled with allegations not based in law. The prosecution appeared to concede, however, that a *Ginther* hearing could be helpful to ascertain if defendant's trial counsel was ineffective.

At the hearing on defendant's motion, defendant's appellate counsel highlighted the prosecution's apparent concession to a *Ginther* hearing, but the trial court dismissed the significance of any concession, explaining that the court itself would decide whether defendant's allegations warranted a hearing. The trial court then asked appellate counsel to tie the factual allegations in his motion to a legal theory on which the court could find that defendant's trial counsel was ineffective, and appellate counsel responded by summarily relying on his 140-paragraph motion and the attached affidavits. The trial court was dissatisfied with this response—it characterized defendant's motion as "rambling," "repetitive," and "unfocused," which made it "difficult" for the court "to ascertain what, precisely are the nature of the errors being asserted." The court also thought that the motion took "a shotgun approach" by listing "a bunch of facts without tying it together to specific law." The court explained that it was defendant's obligation—not the trial court's—to develop the legal basis for defendant's allegations of error. The trial court then attempted to have defendant's appellate counsel explain the factual and legal support for defendant's various claims, but instead of doing so, appellate counsel argued that a *Ginther* hearing was needed to determine if there was support for defendant's claims. The court subsequently denied defendant's request for a *Ginther* hearing. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant on appeal raises six separate claims of ineffective assistance of counsel. Defendant contends that his trial counsel was ineffective due to his (1) failure to object to inadmissible evidence, (2) failure to address defendant's hearing issues, (3) failure to challenge

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-3-

Juror Gauthier, (4) failure to follow proper procedures for ET's special accommodations, and (5) failure to challenge Sefernick or to provide a defense expert. Defendant alternatively argues that the cumulative effect of these errors amounted to ineffective assistance warranting a new trial. We disagree.[2]

## A. STANDARD OF REVIEW

The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "[T]he trial court's factual findings supporting its decision are reviewed for clear error, while the court's determination of whether those facts violated the defendant's right to the effective assistance of counsel is reviewed de novo." *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021). "Defendant, however, failed to obtain an evidentiary hearing to expand the record, so there are no factual findings to which this Court must defer, and this Court's review is instead limited to errors apparent on the record." *Id*. This Court reviews for an abuse of discretion a trial court's decision on whether to grant a *Ginther* hearing. See *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).

## B. ANALYSIS

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted), and a defendant has the burden of showing otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). For an ineffective assistance of counsel claim to be successful, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

---

[2] Although defendant says that he is incorporating all 140 paragraphs from his lower court motion into his appellate argument, he merely contends that these "allegations, if true, would certainly establish that the Appellant suffered prejudice through the ineffectiveness of his Trial Counsel." This bare assertion without elaboration is plainly inadequate to warrant appellate consideration. By failing to adequately brief why the allegations in those 140 paragraphs would establish that his trial counsel was ineffective, defendant has abandoned this portion of his appeal. See *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013) (quotation marks and citation omitted) ("As we have repeatedly stated, an appellant may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."); *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009) ("Failure to brief an issue on appeal constitutes abandonment."). We focus only on the six arguments for which defendant has provided a substantive analysis.

Examination of counsel's actions must be "highly deferential" and without the benefit of hindsight, *id.* at 689, and there is a "strong presumption" that counsel's actions arose from "sound trial strategy," *Trakhtenberg*, 493 Mich at 52. This Court must not "substitute [its] judgment for that of counsel on matters of trial strategy," *Unger*, 278 Mich App at 242-243, but must avoid insulating review of a counsel's unreasonable performance by calling it trial strategy, *Trakhtenberg*, 493 Mich at 52. For any claim of ineffective assistance, the defendant has the burden of establishing the factual predicate of the claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Failing to raise a meritless or futile objection cannot constitute ineffective assistance. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

## 1. INADMISSIBLE EVIDENCE

Defendant contends that his trial counsel was ineffective for failing to object to various pieces of inadmissible evidence. The first piece of evidence defendant contests is Duffin's testimony about defendant's alcohol usage. Defendant seems to contend that the evidence was either not relevant under MRE 401[3] or the evidence was inadmissible under MRE 403 because its probative value was substantially outweighed by the danger of unfair prejudice.

When this case was before the trial court, MRE 401 provided that relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 403 provided that relevant evidence could be excluded if its probative value was substantially outweighed by the risk of unfair prejudice. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Although defendant uses the phrase "massive alcohol consumption" when referring to Duffin's testimony, this phrase is nowhere to be found in the record. Duffin testified that, years before the abuse at issue in this case occurred, Duffin and ET's father agreed that ET would no longer be left alone with defendant after an incident in which defendant drew a bikini on ET. Duffin testified that this decision was also influenced by her and ET's father's concerns about defendant's drinking. Duffin told CPS "that [defendant] drinks a lot" and that defendant "drinks a case of Miller Lite beer and a fifth of whiskey a day." Additionally, when ET disclosed the abuse to Duffin, ET said that defendant had been drinking heavily.

As the prosecution highlights on appeal, some of this evidence may have actually helped defendant's case because it supported that defendant and ET were rarely alone. Duffin testified that Debbie was primarily responsible for watching ET when she was with Debbie and defendant, and that ET would never have been left alone with defendant at the house. Indeed, Duffin had never seen ET alone with defendant. Such evidence was relevant because it made it *less* likely

---

[3] Many of Michigan's Rules of Evidence were amended by Administrative Order No. 2021-10, ___ Mich ___ (2023), but given that defendant's trial occurred before these changes were in effect, this opinion refers to the prior versions of each rule.

that defendant had the opportunity to sexually assault ET. Defendant's trial counsel may have decided not to object to this testimony for this very reason. Regardless, the contested testimony was cumulative of ET's father's testimony about defendant's alcohol consumption, which defendant does not challenge on appeal. Moreover, besides conclusory statements, defendant fails to explain *how* his counsel's failure to object to this testimony prejudiced him.

Defendant next argues that the prosecution improperly vouched for ET through a number of witnesses. Defendant also contends that the prosecution improperly used leading questions. Unfortunately, rather than developing these arguments through substantive analysis, defendant merely provides citations to various points of the record. This Court need not search for arguments to explain or support defendant's position, see *Bowling*, 299 Mich App at 559-560, and it is up to defendant to establish the factual predicate for his ineffective assistance, see *Hoag*, 460 Mich at 6. By failing to adequately brief this section, defendant has abandoned it. See *McGraw*, 484 Mich at 131 n 36. Regardless, our review of defendant's citations to the record reveals no improper vouching. And while the prosecution asked some leading questions, defendant once again fails to explain how his trial counsel's failure to object to the leading questions prejudiced defendant.

Next, defendant argues that Duffin's written statement of ET's initial disclosure should not have been admitted into evidence because it violated MRE 803A. Under MRE 801(c), hearsay was defined to be "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under MRE 802, hearsay is inadmissible unless an exception applies. MRE 803A provided one such exception for child victims of sexual abuse. Under MRE 803A, statements from such victims were admissible into evidence provided that they met the following criteria:

> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.

As our Supreme Court explained, this exception, "which codified the common-law 'tender years exception,' is also an exception to the prohibition against the use of hearsay testimony to bolster the credibility of a witness." *People v Gursky*, 486 Mich 596, 607; 786 NW2d 579 (2010). Defendant only argues that Duffin's statement was not spontaneous and that the delay could not be reasonably explained, which implicates Subsections (2) and (3).

Our Supreme Court has defined "spontaneous" to be "(1) coming or resulting from natural impulse or tendency; without effort or premeditation; natural and unconstrained; unplanned; (2) of a person: giving to acting on sudden impulse." *Gursky*, 486 Mich at 608 (quotation marks and citation omitted). The Court held "that MRE 803A generally requires the declarant-victim to

initiate the *subject of sexual abuse*. The question of spontaneity, at its essence, asks whether the statement is the creation of the child or another." *Gursky*, 486 Mich at 613. The Court explained that, even if a parent initiates questioning, "the mere fact that questioning occurred is not incompatible with a ruling that the child produced a spontaneous statement." *Id*. at 614. The Court clarified, however, that "for such statements to be admissible, the child must broach the subject of sexual abuse, and any questioning or prompts from adults must be nonleading or open-ended in order for the statement to be considered the creation of the child." *Id*.

Here, it is apparent that Duffin's statement was written as a result of ET's spontaneous disclosures, which occurred on December 14, 2018. ET testified that she was upset and eventually disclosed the abuse to Duffin. Duffin and ET were shopping when ET said she wanted to tell Duffin something but was afraid to do so. After reassurance from Duffin, ET disclosed the abuse to Duffin in the store. There is no indication that Duffin suspected anything or pushed ET to make such a disclosure. In other words, the record belies defendant's conclusory contention that ET's statement was manufactured. This was a situation in which ET spontaneously initiated the topic of abuse and Duffin asked further questions as a result of that initial disclosure.

While ET did not make the disclosure immediately after the incident, the delayed disclosure was reasonably explained. ET was young, between seven and eight years old at the time of the disclosure, and she believed that the abuse occurred approximately one year prior to when she told Duffin, which would make ET between six and seven years old at the time of the abuse. Duffin testified that ET wanted to tell Duffin something but felt afraid to do so. Given ET's young age and fear, the delay is excusable, especially in light of no substantive rebuttal by defendant. It thus appears that, on this record, any objection to Duffin's written statement would have been meritless, and defendant's trial counsel cannot be found ineffective for failing to raise a meritless objection. *Putman*, 309 Mich App at 245.

At any rate, our review of the record demonstrates that defendant's trial counsel's decision to allow Duffin's written statement into evidence was part of counsel's strategy to discredit ET's allegations. Defendant's trial counsel did so by attempting to highlight inconsistencies across ET's various disclosures, including the differences between ET's written statement and what ET initially told Duffin. While this strategy did not work, it was nevertheless reasonable, and we do not second-guess trial counsel on matters of trial strategy. *Unger*, 278 Mich App at 242-243.[4]

## 2. HEARING ISSUES

Next, defendant maintains that his trial counsel's failure to address defendant's inability to hear or understand the trial proceedings amounted to ineffective assistance.

---

[4] Additionally, it is unclear how defendant was prejudiced by Duffin's written statement. ET's father had a similar written statement about ET's initial disclosure that was admitted into evidence. Duffin's written statement was thus cumulative to other evidence admitted at trial.

Defendant relies on *People v Vaughn*, 128 Mich App 270, 273; 340 NW2d 310 (1983),[5] in which this Court summarily held, "From the record it appears that the acoustic conditions in the courtroom were so intolerable and so interfered with the orderly conduct of the trial that defendant was denied a fair trial. Hence, we find the trial court's denial of defendant's motion for a mistrial to have been improper."

Here, there is no indication that the acoustics were so bad in the courtroom that it "interfered with the orderly conduct of the trial." *Id*. At one point, the trial court did reference sound created by rainfall, asking if there were any problems hearing the testimony with the additional noise, but nobody raised any hearing problems, including defendant. The court nevertheless instructed everyone to speak up if problems developed. The court also informed ET to speak slowly and loudly because of the rain. Defendant never spoke up about any issues.

Defendant correctly observes that the trial court and defendant's trial counsel did not ask defendant on the record if he could hear the proceedings, and he argues that his trial counsel's failure to recognize his hearing issues needs to be explored at a *Ginther* hearing. However, defendant provides no authority to support his position that the onus was on his trial counsel and the trial court to ensure that defendant did not have any hearing issues.

While defendant argues and presented evidence that he had difficulty hearing and understanding the proceedings, absent from his position is any indication that he told his trial counsel or the trial court about such issues and was deprived of hearing assistance. The courthouse and courtroom had signs stating that hearing assistance was available, and, during jury selection, the trial court announced that there was hearing assistance available. Defendant was in the best position to address his own hearing issues, but he chose not to do so despite ample opportunities.

### 3. JUROR GAUTHIER

Defendant next contends that his trial counsel was ineffective for failing to challenge Juror Gauthier. In support of his argument, however, defendant cites rules involving the disqualification of a judge as well as the Canon of Judicial Conduct. Defendant has not raised any issue on appeal relating to judicial disqualification. Without authority supporting that his trial counsel was ineffective for failing to challenge Juror Gauthier, defendant has abandoned this position. See *Bowling*, 299 Mich App at 559-560. Further, apart from offering conclusory statements that his trial counsel was ineffective, defendant fails to show what prejudice resulted from Juror Gauthier being empaneled. Not only was there no evidence of bias, but the juror was excused at the beginning of the second day of trial because he tested positive for COVID-19. Consequently, Juror

---

[5] Published decisions of the Court of Appeals issued on or after November 1, 1990, are precedentially binding. MCR 7.215(J)(1). Although this Court is "not strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990, . . . they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

Gauthier never engaged in the jury's deliberations. Defendant hypothesizes that Juror Gauthier *could* have somehow influenced the jury before his departure, but this is mere speculation.

## 4. ET'S SPECIAL ACCOMMODATIONS

Next, defendant argues that his trial counsel was ineffective for failing to hold the trial court accountable regarding ET's special accommodations while testifying.

Defendant's argument for this issue relies solely on MCL 600.2163a(18) to (21); he contends that the requirements of these provisions were not followed. MCL 600.2163a provides a procedure for determining if a witness may be permitted to testify with special accommodations, such as in a different location via closed-circuit television. See MCL 600.2163a(19)(a). Defendant is correct insofar as he contends that the trial court did not analyze this statute before granting special accommodations to ET. But this was because defendant's trial counsel stipulated to ET's special accommodations prior to trial. Defendant rightly points out that, if his trial counsel had not so stipulated, then the trial court would have had comply with MCL 600.2163a before granting ET any special accommodations. But that alone does not render defendant's trial counsel ineffective. Defendant does not argue that ET could not have been granted the special accommodations provided to her; he merely argues that, had his trial counsel objected, the trial court would have had to make certain findings under MCL 600.2163a before granting those accommodations. But if the special accommodations granted to ET would have been permissible and available to ET under MCL 600.2163a, then it is not apparent why it was objectively unreasonable for defendant's trial counsel to stipulate to them. Merely observing that trial counsel could have asked the trial court to conduct an analysis under MCL 600.2163a before granting special accommodations to ET is not enough to overcome the presumption that trial counsel provided effective assistance.

At any rate, even if it was objectively unreasonable for defendant's trial counsel to not insist that the trial court make the necessary findings under MCL 600.2163a before granting ET special accommodations, defendant has not shown prejudice from ET's special accommodations such that there is a reasonable probability that the outcome was affected. The statute provides that a defendant must be able to hear the testimony and consult with his or her attorney. MCL 600.2163a(21). The record shows that defendant was able to consult with his attorney on multiple occasions during ET's testimony. Although defendant again raises his hearing issues as an indicator of prejudice, he was in the best position to address any hearing issues, and the record shows that he remained silent on the matter. Defendant may not harbor a purposefully unaddressed hearing issue as an appellate parachute. See *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998).

## 5. EXPERT WITNESS

Defendant next argues that his trial counsel was ineffective for failing to object to Sefernick's qualification as an expert witness and for failing to consult or put forward his own defense expert witness. We address each argument in turn.

MRE 702 governed expert testimony at the time of trial and provided:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of the expert testimony has the burden of establishing that the requirements of MRE 702 are satisfied. *Unger*, 278 Mich App at 217.

In the context of child sexual abuse cases, "an expert may not give an opinion whether the complainant is being truthful or whether the defendant is guilty." *People v Peterson*, 450 Mich 349, 369; 537 NW2d 857 (1995). Along similar lines, "[u]nless a defendant raises the issue of the particular child victim's postincident behavior or attacks the child's credibility, an expert may not testify that the particular child victim's behavior is consistent with that of a sexually abused child." *Id*. at 373-374.

Here, defendant advances conclusory statements regarding Sefernick's qualifications and testimony. He states that Sefernick's expert testimony was not needed and that her qualifications should have been challenged, but he provides no substantive analysis as to why there was no need for Sefernick's testimony or why her credentials were insufficient. The record shows that Sefernick was a manager of a facility tied to the Child Advocacy Center of Northeast Michigan, and she did work as a forensic interviewer and victim advocate. She had received training from the Prosecuting Attorneys Association to conduct forensic interviews, had to undergo continuing education every year, had performed over 600 forensic interviews since 2013, and was a certified medical assistant who helped perform medical examinations. Defendant points to nothing to rebut Sefernick's qualifications. Additionally, Sefernick was not a typical expert witness opining on abstract concepts; she was a fact witness who testified about her interview with ET as well as why no medical examination was performed, both of which were within her field of expertise.

Defendant summarily contends that Sefernick improperly bolstered ET's testimony and legitimized the lack of a physical exam. However, nothing about Sefernick's testimony vouched for ET as a witness, gave an opinion about whether ET was being truthful, or attempted to show that ET's behavior was consistent with an abused child. Defendant's trial counsel had attacked the lack of a medical examination, and Sefernick provided rationale for why no exam was performed on ET.

As for defendant's position regarding his trial counsel's failure to consult or call his own expert witness, "[d]efendant offers no proof that an expert witness would have testified favorably if called by the defense." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Defendant appears to *assume* that an expert would have testified in his favor and helped his defense, but he fails to provide any offer of proof to support this assumption. "Accordingly, defendant has not established the factual predicate for his claim." *Id*.

## 6. CUMULATIVE ERROR

Defendant argues that, even if none of the supposed errors individually warrant a new trial or *Ginther* hearing, their cumulative effect warrants such relief. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). For the reasons explained in this opinion, most of the errors identified by defendant do not hold merit, and any potential error identified by defendant did not clearly prejudice him. Accordingly, defendant has not established cumulative error warranting a new trial.

## III. FAIR TRIAL

Defendant argues that his hearing issues deprived him of a fair trial. We disagree.

## A. STANDARD OF REVIEW

We review this unpreserved issue for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. To affect substantial rights, the error must be prejudicial. *Id*. An error is prejudicial if the error "affected the outcome of the lower court proceedings." *Id*. The defendant bears the burden of showing prejudice. *Id*. Even if prejudice is shown, the reviewing court should reverse only if the "plain, forfeited error resulted in the conviction of an actually innocent defendant" or if the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks omitted; alteration in original).

## B. ANALYSIS

Criminal defendants have a constitutional right to a fair trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. Defendant largely reiterates his ineffective-assistance-of-counsel argument in the context of a fair-trial argument. He relies once again on this Court's decision in *Vaughn*, but, for those reasons already discussed, the record in the present case does not support the same conclusion reached in *Vaughn*. There was no indication that the acoustics of the courtroom were so bad so as to deprive defendant of a fair trial. As previously discussed, defendant chose not to raise his hearing issues at any point despite multiple opportunities. The courthouse and courtroom had signs providing that hearing assistance was available, and the trial court announced at the beginning of the trial that such assistance was available. The trial court halted the trial at multiple points, including during ET's testimony, to ensure that the proceedings could be heard. The trial court even asked defendant at one point if he needed hearing assistance, but defendant did not reply. The trial court questioned defendant about his decision not to testify, and defendant raised no issues with hearing or answering the court during that exchange. Defendant consulted with trial counsel on multiple occasions during ET's testimony. Contrary to defendant's contentions,

he was not unconstitutionally separated from his counsel, especially in light of his stipulation to ET's accommodations.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh